## MANNING and others vs. HOLLENBECK.

LIEN OF INNKEEPER: (1.) *Lien on goods of third party, lawfully in guest's possession.* (2.) *Waiver of lien by relinquishment of goods.* (3.) *Effect of relinquishment procured by fraud.*

1. An innkeeper has a lien upon the baggage or goods brought to his house by a guest, for the amount due from the latter for board and lodging; and this even where such goods belong to a third party, but are lawfully in the guest's possession.
2. Where the innkeeper, without any fraud being practiced upon him, accepts a draft drawn by the guest in payment of his bill, and voluntarily relinquishes possession of the goods, *it seems* that his lien is lost, and will not revive if the goods come again into his possession.
3. But where he is induced to part with his possession by fraudulent representations of the guest (as that a draft given by the latter for the amount of his bill is good and will be paid, when he is not in fact authorized to draw such a draft), there is no waiver of the lien.

APPEAL from the Circuit Court for *Winnebago* County.

Replevin, for a certain "sample trunk and its contents." The defense was, that one Reynolds came to defendant's hotel at Oshkosh in this state, in July, 1868, and took rooms and stopped at said public house

as a guest, remaining there until he had contracted an indebtedness, as such, of $73; that he had with him as baggage the property in question, and defendant had a lien thereon for the amount of his bill; that Reynolds, with intent to cheat and defraud defendant, and to obtain said property and get away with it, gave defendant a draft on a mercantile firm in Chicago for the amount aforesaid, and falsely and fraudulently represented to defendant that said draft would be promptly paid, and defendant, relying upon those representations, permitted him to depart with said trunk and its contents; that the draft was duly presented for payment, and payment refused; that in October following, Reynolds returned to said hotel as a guest (defendant being still the landlord), and brought said trunk as his baggage; that he remained until he had contracted a bill of $12.50; that defendant took possession of said baggage, and claimed an innkeeper's lien thereon for the entire sum of $85.50; that no part of said bill has been paid except $12.50, and defendant claims a lien on the property for the remainder of the bill, and a right to possession of the property until the same is paid.

The evidence need not be stated.    The court, at plaintiff's request, instructed the jury that if defendant took a draft made by Reynolds, and voluntarily released his lien upon the trunk, by permitting it to be taken off his premises, he thereby gave credit to Reynolds by relying upon his statement, or promise, or responsibility, and his remedy was against Reynolds, and he had no further lien on said trunk. Instructions asked by the defendant were refused, including the following: " 2. That if Reynolds gave defendant a draft on plaintiffs for the amount of his bill at defendant's hotel as a guest, knowing that the same would not be paid, and defendant, relying upon the draft and believing that it would be paid, permitted Reynolds to remove the trunk, they must find for defendant."

"6. That if defendant took the draft on plaintiffs by way of security for his bill, but was induced to take it by the false and fraudulent representations of Reynolds, his lien was not thereby divested."

Verdict for the plaintiffs; new trial denied; and defendant appealed from a judgment on the verdict.

*Earl P. Finch*, for appellant.

*Freeman & Hancock*, for respondents.

COLE, J. The principle is not contested, that generally an innkeeper has a lien upon the baggage or goods brought to his house by a guest, for the expenses of board and lodging of such guest; but it is claimed that the evidence shows that there was a clear waiver of the lien by the defendant for the bill made by Reynolds in July, by his accepting the draft and parting with the possession of the trunk. It may well be that if the innkeeper, without any fraud being practiced upon him, accepts a draft drawn by his guest in payment of his bill, voluntarily relinquishing the possession of the baggage or goods, his right to a lien is gone, and that it will not revive should such baggage come again into his possession. But where the innkeeper is induced to part with the possession of the property through false and fraudulent representations made by the guest, we are disposed to hold that under such circumstances he does not thereby waive his lien. It is then in principle analogous to the case where a vendor is induced to part with his goods through the fraud of the vendee; the defendant vendor may recover the possession from the fraudulent purchaser, or from any one claiming under him, not being a *bona fide* purchaser for value.

In this case the court was asked, among other things, to instruct the jury that if they found from the evidence that Reynolds gave the defendant a draft on the plaintiffs for the amount of his bill at the defendant's hotel, as a guest, knowing that the same

would not be paid, and the defendant, relying upon the draft and believing the same would be paid, permitted Reynolds to remove the trunk, then they should find for the defendant. This instruction the court refused to give.

It appears from the case that Reynolds was in the employ of the plaintiffs, selling goods for them on commission. He stopped at the defendant's hotel as a guest in July, having with him a trunk with goods and samples belonging to them. When he went away, he gave the defendant a draft on the plaintiffs for the amount of his bill, including also therein thirty dollars for livery, which draft was dishonored. It likewise appeared from the testimony of one of the plaintiffs, that Reynolds had no funds in their hands to pay this draft, and that he had do authority to draw upon them in any case whatever. Now, it seems very clear, if Reynolds induced the defendant to part with the possession of this trunk by giving him a draft for the amount of his bill, which draft he represented to be good and would be paid, when he knew that it would not be, that he procured the delivery of such trunk by fraud and imposition. And therefore the question is, If he did thus obtain possession of the trunk by falsely representing that the draft was good and would be paid, when he knew it would not be, does this discharge the lien? It seems to us not, and that upon well settled principles Reynolds would not be permitted, if the trunk were his, to take advantage of his own wrong, and insist that the defendant had waived his lien by accepting the draft and parting with the possession of the property. Does it, then, make any difference that the goods belonged to the plaintiffs instead of Reynolds? We cannot see that it does. The authorities cited upon the brief of the counsel for the defendant clearly show that an innkeeper's lien extends to goods brought to his inn by a guest, though they belong to a third party. See also,

the case of *Snead v. Watkins*, 37 Eng. L. & Eq. 384. The defendant, therefore, had in the first instance a lien upon this trunk for the amount of the expenses of Reynolds at his house. And it made no difference that the goods in the trunk, and the trunk itself, were the property of the plaintiffs, so far as the lien was concerned. Why then should there be any distinction now, when the defendant was induced to deliver up the possession of the property, originally relying upon representations of Reynolds that were false and fraudulent, that the draft was good and would be paid by the plaintiffs?

We think the second and sixth instructions asked by the defendant were substantially correct, and should have been given to the jury. They had a direct bearing upon the question of fraud, and whether the defendant was induced to part with the possession of the trunk in the first instance by the false and fraudulent representations made by Reynolds in respect to the draft.

We do not deem it necessary, therefore, to notice any other question than the error of the circuit court in refusing to give these two instructions.

*By the Court.*—The judgment of the circuit court is reversed, and a new trial ordered.