[No. 6,891.—Department Two.]

## WILLIAM PALMTAG *v.* FRANK DOUTRICK.

PLEDGE—BAILMENT.—As a general rule, the delivery back of the possession of the thing pledged, with the consent of the pledgee, terminates the bailment and the lien; but if the pledgor recover possession of the pledged property wrongfully, without the consent of the pledgee, the pledge is still valid; and if it is delivered back to the pledgor in a new character, as a special bailee or agent, the pledgee will be entitled to the pledge, not only against the owner, but as against third persons.

ID.—ID.—JUS TERTII—EVICTION—WARRANTY—DEFENSE.—In the ordinary case of a pledge, the pledgee impliedly undertakes to deliver back the property to the pledgor, when the sum for which it is pledged is paid; but on the other hand, the pledgor impliedly undertakes that the property pledged is his own, and may be safely returned to him; and if it turns out not to be so, may restore it to the lawful owner, or may, after demand by the true owner, set up his right as a defense.

ID.—ID.—ID.—ID.—ID.—ID.—When the real owner of the property does not appear and assert his right to it, the bailee will not be permitted, of his own motion, to set up such right for him as a defense against his bailor, but can do so only when he defends on the title of the owner and by his authority.

ID.—LESSOR AND LESSEE—EVICTION—TITLE PARAMOUNT.—If the lessee is disturbed in his occupation by a party having a title paramount to that of his lessor, so that he can not legally continue his occupation without rendering himself liable as a trespasser to the other party, he may yield the possession and take a new lease under it, or he may abandon the possession; and in either case, he will thereafter not be liable to pay rent to the original lessor.

ID.—ID.—ID.—ID.—ID.—R., being the owner of certain musical instruments, pledged them to F., and was afterwards employed to assist in the management, care, and renting of the same; and in the course of his employment rented a piano (part of the pledged property) to D., but in-

stead of making the lease in the name of F., as he was directed, made it in his own name. F. notified D. that he was the owner, and D. agreed to hold the property for him, and at the end of the lease to return it to him. R. made a bill of sale of the property to P. to satisfy a debt, and at the same time assigned the lease made by him to D.—P. taking with notice of F.'s claim. P. notified D. of the sale, and the latter accepted from the former a lease. In an action by P. against D.,

*Held*, that F. had not lost his lien, and that D. was entitled to set up the title of F. as a defense to the action.

APPEAL from a judgment for the plaintiff in the Twentieth District Court, County of San Benito. BELDEN, J.

*S. F. Geil* and *A. S. Kittredge*, for Appellant.

There may be a re-transfer of possession to the owner for a temporary purpose as agent or special bailee of the pledgee without destroying the lien. (Parsons on Contracts, 3d vol., 6th ed., p. 238; *Hayes* v. *Riddle*, 1 Sandf. N. Y. 248; *Reeves* v. *Capper*, 5 Bing. N. C. 136.) Doutrick recognized Folger's claim by agreeing to then return the piano to him. By this arrangement Folger acquired constructive possession by his tenant Doutrick, and his lien was revived and restored. If possession of a pledge be terminated by fraud, the lien will be revived if possession be regained. (Parsons on Contracts, 3d vol., 6th ed. p. 238; *Wallace* v. *Woodgate*, Ry. & M. 193; *Manning* v. *Hollenbeck*, 27 Wis. 202; *Dicas* v. *Stockley*, 7 Car. & P. 587; *Bristol* v. *Wilsmore*, 1 Barn. & Cress. 514; *Johnson* v. *Chely*, 43 Cal. 299; Taylor's Land. and Ten., 6th ed., §§ 442, 705; *Hayden* v. *Davis*, 9 Cal. 573.)

Palmtag had notice of Folger's claim of ownership or lien, and consequently took the transfers with the infirmity of Riegart's title and subject to the same defenses, and stands no better than Riegart would, were he an actor here instead.

*Lee & Brotherton* and *Dickinson & Hebbard*, for Respondents.

Folger's lien upon the property pledged depended upon his possession. That possession of the piano in controversy was voluntarily yielded up and his lien lost when Folger consented and permitted Riegart to take the same into his own possession and use it as his own property, in hiring it to this appellant Doutrick; and further, by ratifying the contract of

hiring when he went to Salinas City to see Doutrick. Having once permitted the piano to go out of his possession, and permitted Riegart, the pledgee, to re-assume possession thereof, and assume the ownership, Folger could not re-assert his own title thereto against any one who had acted under that assumption of ownership. (Civ. Code, §§ 2988, 2991; Story on Bail., 8th ed., § 287; Schoule on Bail. 187, 188, 189, and cases cited; *Treadwell* v. *Davis*, 34 Cal. 601.)

The defendant's relation to the plaintiff is analogous to the relation of lessee to his landlord, and he is estopped to deny plaintiff's ownership. The authorities upon the estoppel of a tenant may be cited as analogous to the estoppel resulting from the contract of hiring. (*Tewkbury* v. *Magraff*, 33 Cal. 237; *Franklin* v. *Merida*, 35 id. 566; *Peralta* v. *Ginochio*, 47 id. 459; *Goldstein* v. *Hart*, 30 id. 372.)

THORNTON, J.:

In this action, which was for the recovery of the possession of a piano, on a trial by the Court, plaintiff recovered judgment, and defendant appealed.

The points to be considered arise on the findings of fact, which, with the conclusions of law, are here inserted:

" 1. In the month of November, 1876, one George Riegart was the owner of a number of musical instruments, pianos, organs, etc., that were then at the hall and building of Peter Folger, in the town of Watsonville, Santa Cruz County.

" 2. Riegart was at the same time indebted to Folger in the sum of about one thousand six hundred dollars, for which amount Folger then held the note of said Riegart.

" 3. While said instruments were in the building of Folger, and while said debt was so owing by Riegart to Folger, Riegart, upon the 2d day of November, 1876, executed and delivered to said Folger a bill of sale of all said instruments, including therein the piano, the subject of this controversy.

" 4. It was understood between said Riegart and Folger that this bill of sale was in fact a pledge or security of this property for the debt of Riegart, and that if the proceeds of said instruments, either from sale or rent of the same, should pay said claim, that said property, or the proceeds thereof remaining, should belong to said Riegart.

"5. After the execution of said bill of sale, and of said agreement, said property remained as before in the building of 'Folger,' and was used, sold, and rented by Folger as opportunity offered. Riegart continued to assist in the management, care, and renting of the same.

"6. In the month of November, 1877, Frank Doutrick, the present defendant, was directed by an association of which he was a member to rent a piano for the use of this association. For this purpose he visited Watsonville, and was shown the piano in question by Folger's son, at the time this instrument was in the room of Folger, and Folger himself was absent from home. Riegart consulted the wife of Folger as to the lease proposed by Doutrick, and was advised to make it. Riegart then boxed the piano, and took it to the depot for transportation to Doutrick, at Salinas City. Before the piano was taken from the depot Folger returned home, and was informed by Riegart of the arrangement made with Doutrick, and consented to the same. He directed 'Riegart' to have the lease made in his (Folger's) name. Riegart then took the piano to Salinas City, and delivered it to Doutrick, and also gave Doutrick a lease in his (Riegart's) name for the piano for six months, from November 29th, 1877, at a rental of ten dollars per month. Upon making this lease to Doutrick, Riegart collected from Doutrick the six months' rent of sixty dollars, and did not return to Watsonville.

"7. Riegart not returning, as he had agreed, to Watsonville, Folger repaired to Salinas City, found the piano, saw Doutrick, and explained to Doutrick his connection with the instrument, and notified Doutrick that he was the owner of it. It was then agreed that Doutrick might keep the piano for the six months for which it was leased, and that he would then return it to Folger; this was December 20th, 1877.

"8. In the month of December, 1877, Riegart was indebted to William Palmtag, the present plaintiff, in the sum of about six hundred dollars upon a former transaction. Riegart offered to sell to 'Palmtag,' in satisfaction of this debt, the piano then at 'Doutrick's,' and upon the 31st of December, 1877, executed to 'Palmtag' a bill of sale of this piano, and at the same time assigned to him the lease to 'Doutrick.'

"9. March the 8th, 1878, 'Palmtag' wrote to Doutrick, ex-

hibited the bill of sale, and the assignment of the lease by Riegart, and notified Doutrick that he (Palmtag) was the owner of this piano, and that he should expect Doutrick to surrender it to him at the expiration of the lease, and that if Doutrick did not forthwith sign a lease to him, he should sue him for the piano and for back rent for its use.

"10. As the result of the negotiations between Palmtag and Doutrick, Palmtag executed to Doutrick, and Doutrick accepted from Palmtag, a lease by the latter of this piano for the period of six months from the 29th of November, 1877, at ten dollars per month; said lease being an exact repetition of the former lease from 'Riegart,' except as to the name of the lessor, and being intended only as an attornment upon the part of Doutrick to Palmtag.

"11. At the time the bill of sale was executed by 'Riegart' to Palmtag, and the lease was assigned, Palmtag knew that 'Folger' asserted some claim to this piano, and that he either claimed to own or have some lien upon it as security for a debt from Riegart to himself. Palmtag made no inquiry from 'Folger' as to the nature or extent of this claim.

"12. At the expiration of the six months named in the lease, 'Doutrick' restored this piano to 'Folger,' who still retains the same. Before giving up the piano, Doutrick notified Palmtag of the claim of Folger, and informed him that if he would give his personal security against the claim of Folger, he would surrender the piano to him, Palmtag. Palmtag refused to so indemnify him, and insisted upon the delivery of the piano to himself, which was by 'Doutrick' refused.

"13. This piano was and is of the value of six hundred dollars ($600).

"14. Riegart during all this time was indebted to Folger in the sum of over one thousand six hundred dollars. No part of this has been paid, otherwise than by transfer of these instruments as hereinbefore stated. Folger advanced to 'Riegart' the money to pay for these instruments, and himself kept the same stored and paid the insurance and taxes on the same.

"Conclusions of law:

"1. That the lien of Folger upon this piano was lost by his permitting the same to pass from his possession and under the control of Riegart.

"2. That by attorning to Palmtag for the piano, defendant is estopped from now asserting or denying the ownership of Palmtag of this piano.

"Judgment for plaintiff and against defendant, Doutrick, for restitution of this piano; or, if such restitution can not be had, for six hundred dollars, the value thereof, and costs of suit."

It will be observed that the Court below held that the lien of Folger on the piano was lost by permitting it to pass from his possession and under the control of Riegart. The piano was in the possession of Folger as a pledge.

There is no doubt that the transfer of possession to the pledgee of the thing pledged is requisite to constitute a valid pledge, and the continuance of possession is also requisite. (C. C., §§ 2988, 2913; Story on Bailments, §§ 287, 279, and cases cited; *Goldstein* v. *Hort*, 30 Cal. 375; *Treadwell* v. *Davis*, 34 id. 601; *Ryall* v. *Rolle*, 1 Atk. 165; *Reeves* v. *Capper*, 5 Bing. N. C. 140, 141.) As a general rule, it is, no doubt, true that the delivery back of the possession of the thing pledged with the consent of the pledgee terminates the bailment and his lien. (*Homes* v. *Crane*, 2 Pick. 607; *Jarvis* v. *Rodgers*, 15 Mass. 389; *Treadwell* v. *Davis*, 34 Cal. 60.) But if the pledgor recover possession of the pledged property wrongfully, without the consent of the pledgee, the pledge is still valid. (*Walcott* v. *Keith*, 2 Foster, 196.) And if it is delivered back to the pledgor in a new character, as a special bailee or agent, the pledgee will still be entitled to the pledge, not only against the owner but against third persons, for under such circumstances the possession is perfectly consistent with the existence of the original right of the pledgee. (*Macomber* v. *Parker*, 14 Pick. 497; *Reeves* v. *Capper; Hays* v. *Riddle*, 1 Sand. Sup. Ct. 252.)

What are the facts in the case before us? They are, that Riegart, with the consent of Folger, the pledgee, and as his agent, rented or hired the piano to the defendant, with a direction to Riegart to take the lease in his (Folger's) name. Riegart then took the piano from Watsonville, where it was in the possession of Folger, to Salinas City, where the defendant lived, and, instead of taking the lease in Folger's name, took it in his own name, and collected the rent for six months,

amounting to sixty dollars, which he pocketed, and did not return to Watsonville, as he had agreed, from which place he had taken the piano from Folger's possession, manifestly as the agent of Folger. Upon this, Folger went to Salinas City, found the piano, saw Doutrick, explained to Doutrick his connection with the property, and gave notice to the defendant that he was the owner of it. It was then agreed that the defendant might keep the piano for the six months for which he hired it, and then return it to Folger. This was on the 20th of December, 1877. It can not be said, under these circumstances, that the pledgee has voluntarily delivered the possession of the pledged property to any one in such a manner as to waive or lose his lien. Riegart could not be heard to allege this in an action brought by Folger to recover the piano, and we see nothing in the facts found to place the plaintiff, his assignee, in any better position. (*Wallace* v. *Woodgate*, Ry. & M. 193; *Manning* v. *Hollenbeck*, 27 Wis. 202; *Dicas* v. *Stockley*, 7 Car. & P. 587.) In fact, the plaintiff knew facts sufficient to put him on inquiry as to Folger's claim, which inquiry he never made, and therefore must be held to be cognizant of all the facts relating to Folger's claim to the piano, including his (Folger's) agreement with Doutrick. To permit plaintiff now to say that Folger's claim was not superior, would be to allow him to take advantage of his own wrong—his fraudulent agreement with Doutrick, with knowledge of all the facts concerning Folger's claim to the property. In our judgment Folger never lost his right. He could not be deprived of it by a fraud such as was practiced by the plaintiff and Riegart.

It follows that the Court mistook the law, when it held that Folger had lost his lien.

But it is contended that the defendant is estopped (even if Folger could have recovered the property in question), by the lease which he (defendant) gave to the plaintiff. It is said he has attorned to the plaintiff, and is estopped to deny his title.

The findings on this subject are those which follow and include the eight. A bill of sale of the piano was executed to the plaintiff by Riegart on the 31st of December, 1877, and Riegart at the same time assigned to him the lease of Doutrick, procured in the manner above stated.

On the 8th of March, 1878, plaintiff notified Doutrick that he was the owner of the piano, and as a result of his dealings with plaintiff, as stated in the findings, procured a lease from him. When the bill of sale was made to plaintiff by Riegart and the lease assigned, he knew that Folger asserted some claim to the piano, and that he either claimed to own it or to have some claim on it as a security for a debt; but he never made any inquiry of Folger as to his claim. At the end of six months, the defendant delivered the piano to Folger. Folger's debt had not been paid when the trial was had.

It is now contended by counsel for plaintiff that the defendant can not, under the circumstances stated and referred to, set up the right of Folger to defeat this action, by reason of the lease to plaintiff. It would be a misfortune and a reproach to justice if such were the law. Such a contention, however, is not sustained by right reason or decided cases. We shall refer to some of them. We remark here that what is called a lease of the piano by the plaintiff to defendant is nothing but a hiring of personal property for use for compensation—a species of bailment known to the civil law as *locatio rei*, or *locatio et conductio rei*. (*Coggs* v. *Bernard*, 12 Ld. Raym. 909; Story on Bailments, § 8; Redfield on Carriers, etc., § 675.)

In all bailments, the general rule is that the bailee is bound to return the thing bailed to the bailor. But there are many exceptions to this rule, as thoroughly considered and well-decided cases show, in which the bailee was entitled to set up the *jus tertii*. In *Shelbury* v. *Scotsford*, Yelv. 23, decided in the 14 Elizabeth, the plaintiff sued in assumpsit for a breach of contract to redeliver a horse, made by defendant, who had borrowed it of him. The defendant set up as a bar that the property was in J. S., who had taken it from him by force, to which there was a replication that defendant suffered J. S., by fraud and covin, to take the horse. Upon this issue was joined, and verdict found for defendant. Plaintiff moved in arrest of judgment, on the ground that notwithstanding the verdict, judgment should have been for him, by reason of defendant's confession in his plea in bar. This was adjudged

against him by Fenner and Yelverton. The reporter states the reason as follows : " For the matter alleged by the defendant does in law discharge the promise by reason of the former property of the horse in J. S.," and proceeds *arguendo* to style it " an eviction of the horse out of the defendant's possession, which discharges the promise, as well as an eviction of the lessee for years discharges all rents, bonds, and covenants in any sort depending on the interest."

*Hardman* v. *Willcock*, 9 Bing. 382 (1832), was an action brought by the plaintiff to recover the proceeds of goods sold by defendant as an auctioneer. The goods were in the plaintiff's possession, and the defendant had been employed by him to sell them. The assignees of an insolvent gave notice to the defendant before the sale, that the goods were their property as such assignees, and that they had been fraudulently removed by collusion between the plaintiff and insolvent. After receiving this notice the defendant sold the goods and rendered an account of the sale to the plaintiff. On receiving indemnity from the assignees, the defendant refused to pay over to the plaintiff the proceeds of the sale, and to an action for money had and received by plaintiff, defendant set up in defense the right of the assignees.

The jury affirmed the right of the assignees, and found that the plaintiff obtained possession of the goods by a fraud between him and the insolvent, and the Court (Patterson, J.), on this state of facts, directed the jury to find a verdict for defendant, with liberty to the plaintiff to move to enter a judgment for the amount of the sale, in case the Court should be of opinion that it was not competent for the defendant, in the situation in which he stood to plaintiff, to set up the right of the assignees.

On the motion being made the Court held the directions of the judge to be correct, on the ground that the plaintiff's possession of the goods arose out of a fraud concocted between him and the insolvent. "It is clear," said the Court, by Alderson, J., " that if the insolvent had put the goods into the hands of the defendant for sale, his assignees could have stepped in and claimed the produce from the defendant, and that the insolvent could not have maintained this action after such claim. And we think, that the plaintiff, who takes the goods by a

fraud between him and the insolvent, can be in no better situation than the insolvent."

*Cheeseman* v. *Exall*, 6 Exch. 341, was an action brought against a depositary by the depositor. The depositor alleged that it was a pledge; the jury found that it was not, but that it was delivered to the defendant fraudulently to defeat an execution. The defendant was allowed to set up the title of the true owner. This case was really determined on the same ground as *Hardman* v. *Willcock*. In this case there are some remarks made by the justices, as to the bailment known as a pledge, which may be regarded as *dicta*, because the jury found that there was no pledge. But they are the *dicta* of able and learned judges, which deserve great respect, and they were subsequently approved in other cases. Attention is called to these remarks. Pollock, C. B., said:

" My impression is, that if a person pledges with another, property to which he has no title, and which he has no right to pledge, the real owner may interpose and get possession of the property. In the administration of the criminal law, it constantly occurs, that where stolen property has been pledged, the pawnbroker is called upon to deliver it to the rightful owner. If a servant illegally pledges his master's plate, the servant can not recover it by an action, since the pawnbroker may inquire who is really the true owner, and deliver it to him." Further speaking of the result of the ordinary contract of pledge, he makes this observation: "In that case, the person who pledges impliedly undertakes that the property pledged is his own; and if it turns out not to be so, the pledgee may restore it to the lawful owner." Parke, B., in the same case said: " In the ordinary case of a pledge, the pledgee impliedly undertakes to deliver back the property to the pledgor, when the sum for which it is pledged is paid. On the other hand, the pledgor impliedly undertakes that the property pledged is his own property, and may be safely returned to him." He was of opinion that the pledgee might set up the *jus tertii*.

In *Ogle* v. *Atkinson*, 5 Taunt. 759, a warehouseman receiving goods from a consignee who had actual possession of them, to be kept for his use, was allowed to set up the right of another. (See *Sheridan* v. *The New Quay Co.*, 4 C. B., N. S. 618;

*Wilson* v. *Anderton,* 1 Barn. & Adol. 450; *Watson* v. *Lane,*
11 Exch. 769; *Dixon* v. *Yates,* 5 Barn. & Adol. 313.)

The point has been fully and ably discussed in the case of
*Biddle* v. *Bond,* reported in 34 L. J. (N. S.) Q. B. 137; S. C., 6
Best & S. 225. In this case the plaintiff had distrained the
goods of one Robbins for rent of a house, claimed to have been
demised by the plaintiff to Robbins, and had placed them in
the hands of the defendant, who was an auctioneer, to sell at
auction. Before the sale Robbins notified defendant not to sell
the goods; that the distress was void, inasmuch as the rela-
tion of landlord and tenant never existed between plaintiff
and himself, and that there was no rent in arrear. He also
notified defendant, that if he sold the goods to retain the pro-
ceeds for him. The defendant sold the goods, and refused to
pay over the proceeds to plaintiff, setting up the right of Rob-
bins. The Court held that he could do so. Blackburn, deliv-
ering the judgment of the Court, said: "We do not question
the general rule, that one who has received property from an-
other as his bailee, or agent, or servant, must restore or ac-
count for that property to him from whom he received it.   *
*   *   But the bailee has no better title than the bailor, and
consequently, if a person entitled, as against the bailor, to the
property, claims it, the bailee has no defense against him.
Such was the position of the defendant in the present case.
If Robbins had chosen to sue him in *trover,* or, waiving the
*tort,* had sued for money had and received, the defendant
would have had no defense. He was therefore compelled to
yield to Robbins' claim; and it would certainly be a hardship
on him if, without any fault of his own, the law left him
without any defense against the plaintiff for so yielding. We
do not, however, think that such is the law.   *   *   *   Now,
in the ordinary class of bailments, such as the present, the
representation is by the bailor to the bailee, that he may safely
accept the bailment; and so far as any weight is to be given
to the representation, it makes against the estoppel. This is
pointed out by Parke, B., in *Cheeseman* v. *Exall,* in the case
of a pledge, and is indicated as one of the grounds on which
the judgment of the Court of Common Pleas proceeded in
*Sheridan* v. *The New Quay Company,* which was the case of
a carrier." The learned Justice then proceeds to refer to sev-

eral cases (all of which are cited above) in which the *jus ter-
tii* was permitted to be set up, and then remarked: "It is
true, that in the first two of these cases the plaintiff had ob-
tained the goods by a fraud upon the person whose title was
set up, whilst in the present case there is nothing in the evi-
dence to show that the plaintiff, though a wrong-doer, did not
honestly believe that he had the right to distrain. But we
do not think that this circumstance alters the law on the sub-
ject. The position of the bailee is precisely the same, whether
his bailor was honestly mistaken as to the rights of the third
person, or fraudulently acting in derogation of them. We
thing that the true ground on which a bailee may set up the
*jus tertii,* is that indicated in *Shelbury* v. *Scotsford,* viz., that
the estoppel ceases when the bailment on which it is founded
is determined by what is equivalent to eviction by title par-
amount."

The Supreme Court of this State, in *Hayden* v. *Davis,* 9
Cal. 573, allowed a common carrier to avail himself of the *jus
tertii* as a defense against the consignor. In this case the
defendant offered to prove that the wheat which he had re-
ceived from plaintiff and failed to deliver on his demand was
the property of one Edwards, that plaintiff had obtained pos-
session of it by fraud and false representations, and that Ed-
wards had forbidden him to deliver it to plaintiff. The Court
on the trial excluded the evidence, to which an exception was
reserved. The then Supreme Court held the exclusion of this
testimony error, and reversed the judgment of the lower
Court. The opinion of the Court was delivered by Terry, C.
J. He cited *Hardman* v. *Willcock,* above referred to, and
*King* v. *Richards,* 6 Whart. 418. In this last case there is a
very elaborate discussion of the question. It was an action
by the assignees of the consignor against a common carrier.
The *jus tertii* was allowed as a defense. Kennedy, J., deliv-
ering judgment, said: "If the bailee in such a case re-
cuives" (the word is "recover" in the report, but it is evidently
a misprint) "the goods from the bailor innocently, under the
impression made by the bailor, that he is the owner thereof,
or has the right to dispose of them in the manner he is doing,
and therefore promises to return the goods to the bailor, it is
very obvious that such a promise ought not to be regarded as,

binding, because obtained through a false impression made willfully by the bailor; and truth, which lies at the foundation of justice, as well as all moral excellence, would seem to require, in every such case, that the goods should be delivered up to the true owner, especially if he demand the same, instead of the wrongful bailor. But if the bailee knew at the time he received the goods, and made the promise to redeliver them to the bailor, that the latter had come wrongfully by them, either by having taken them tortiously or feloniously from the owner, then the bailee thereby became a participant in the fraud or the felony, and it would be abhorrent to every principle of justice that he should be protected against the demand or claim of the owner." (*King* v. *Richards*, 6 Whart. 424, 425.) Further, the learned Justice observed: "And it may be correct enough to hold, when the real owner of the property does not appear and assert his right to it, that the carrier or bailee shall not be permitted, of his own mere motion, to set up as a defense against his bailor, such right for him. But it would be repugnant to every principle of honesty to say, that after the right owner has demanded the goods of the bailee, the latter shall not be permitted, in an action brought against him by the bailor for the goods, to defend against his claim, by showing, clearly and conclusively, that the plaintiff acquired the possession of the goods either fraudulently, tortiously, or feloniously, without having obtained any right thereto."

These positions are evidently sound, and challenge and receive our concurrence and approval. (*Floyd* v. *Bovard*, 6 Watts & S. 76, followed and approved the judgment in *King* v. *Richards; Bates* v. *Stanton*, 1 Duer, 79; *Beach* v. *Berdell*, 2 id. 327; *Lawrence* v. *Berry*, 19 Ala. 130; *Whittier* v. *Smith*, 11 Mass. 210; Story on Bailments, § 266, Bennett's ed.; Smith's Lead. Cas., vol. 2, 781.)

In this case, the right of Folger had been acknowledged by Doutrick before he attorned to Palmtag, the plaintiff. Palmtag accepted the so-called lease and bill of sale with sufficient knowledge of Folger's claim to put him on inquiry. He made no inquiry to find out the exact state of Folger's claim, which was valid against him. Under these circumstances, the law charges him with knowledge of the title of

Folger. (*Fair* v. *Stevenot*, 29 Cal. 486; *Smith* v. *Yule*, 31 id. 184; *Pell* v. *McElroy*, 36 id. 272; *Williamson* v. *Brown*, 15 N. Y. 354.) Then, in accepting the lease from Doutrick, he was acting tortiously and fraudulently in regard to Folger's right to the possession (assuming that Doutrick's possession after the 12th day of March, 1878, the date of the lease, was Palmtag's); such possession being thus tortiously and fraudulently acquired, the promise to redeliver should not be held binding on him. (6 Whart., remarks from page 418, above quoted.) Nor can Palmtag be heard to urge any estoppel by the conduct of Doutrick, when he knew the title of Folger. Under such circumstances it can not be held that he, Palmtag, has altered his position to his injury, especially where, as here, the conduct amounted to a collusive arrangement to wrong and defraud Folger.

Conceding that Doutrick is *in pari delicto* with Palmtag, Doutrick is a defendant, and must prevail against any right which Palmtag has. (See Broom's Legal Maxims, maxim "*In pari delicto*," etc., 286.) Wherever two or more persons are engaged in a fraudulent transaction to injure another, neither law nor equity will interpose to relieve either of those persons, as against the other, from the consequences of his own misconduct. (*Bolt* v. *Rogers*, 3 Paige, 157.)

The law in relation to the bailment known as *hiring for use* (on compensation being made) as to the right of the bailee to set up the *jus tertii* against the bailor, is the same as that in the case of a common carrier or warehouseman. (Story on Bailments, §§ 415, 102 to 110, 117, 118, 120, 257, 261, 265, 266, 291.)

As to eviction of tenant by title paramount, referred to in some of the cases above cited, notably *Shelbury* v. *Scotsford* and *Biddle* v. *Bond*, see *Morse* v. *Goddard*, 13 Metc. (Mass.) 177; *George* v. *Peabody*, 4 Cush. 354; *Carpenter* v. *Parker*, 3 C. B. (N. S.) 235; S. C., 91 Eng. Com. L.; Bigelow on Estoppel, 287; 6 Rob. Pr. 363, the rule is thus stated by Wilde, J.: "If the lessee is disturbed in his occupation by a party having a title paramount to that of his lessor, so that he can not legally continue his occupation under the lessor without rendering himself liable as a trespasser to the other party, he may yield the possession and take a new lease under him, or

he may abandon the possession; and in either case he will thereafter not be liable to pay rent to the original lessor. Such an entry and disturbance are equivalent to an ouster." (6 Rob. Pr. 364.)

Here there was what was equivalent to an eviction within the rule in the cases just above referred to, in Doutrick delivering possession to the true owner, and the obligation of Doutrick to Palmtag ceased. " The estoppel ceases when the bailment on which it is founded is determined by what is equivalent to an eviction by title paramount." (*Per* Blackburn, J., in *Biddle* v. *Bond*, above cited.)

It should be stated, that the whole rule may appear, that the bailee can only set up the title of a third person in an action by the bailor when he defends on such title, and by authority of such third person. (*Hayden* v. *Davis, King* v. *Richards, Biddle* v. *Bond, ut supra; Thorne* v. *Tilbury*, 4 Q. B. 511.) Here the bailee had the authority of Folger so to defend. Having delivered the property to Folger, Folger could not refuse him the right to defend on his title.

The conclusion here reached is in no wise out of accord with what is held in *Tewksbury* v. *Magraff*, 33 Cal. 237; *Franklin* v. *Merida*, 35 id. 558, and the cases following them.

The sections of the Civil Code (2988, 2991) referred to by counsel for appellant accord exactly with the views urged in this opinion, as also does section 2913 of the Civil Code, if applicable.

Our conclusion is that the judgment should be reversed and the cause remanded, with directions to enter judgment for the defendant. So ordered.

MYRICK, J., and SHARPSTEIN, J., concurred.