234 F.2d 513
 BLAIR HOLDINGS CORPORATION, a corporation; Blair-Rollins &
Co., Incorporated, a corporation, and Blair & Co.,
Inc., of New York, a corporation, Appellants,
v.
BAY CITY BANK AND TRUST COMPANY, a corporation, Appellee.
 No. 14552.
 United States Court of Appeals Ninth Circuit.
 June 11, 1956.
Rehearing Denied Aug. 3, 1956.
 
 1
 Marshall E. Leahy, John F. O'Dea, San Francisco, Cal., for appellants.
 
 
 2
 Phillip Barnett, Rodney H. Robertson, Barnett & Robertson, San Francisco, Cal., for appellee.
 
 
 3
 Before ORR and FEE, Circuit Judges, and JAMES M. CARTER, District Judge.
 
 
 4
 JAMES M. CARTER, District Judge.
 
 
 5
 This is an interpleader action, in which after the discharge of the plaintiff, Dean Witter et al., the issue concerns the ownership of 1600 shares of Blair Holdings Corporation stock deposited in court.
 
 
 6
 The District court below had jurisdiction under the provisions of Sec. 1335 and Sec. 2361, Title 28 U.S.C.A. The plaintiffs, partners in Dean Witter & Co., were citizens of the state of California. The defendant, Blair Holdings Co., was incorporated under the laws of New York; defendant Blair-Rollins & Co., Inc., was incorporated under the laws of Delaware; defendant Blair & Co., Inc., of New York, was incorporated under the laws of California; defendant Bay City Bank and Trust Company was incorporated under the laws of Texas. All individual defendants were citizens of the state of California. In order that there be jurisdiction in an interpleader action under Sec. 1335 and Sec. 2361, Title 28 U.S.C.A., it is only necessary that there be diversity of citizenship between the defendants, i.e., the claimants or certain of them, and jurisdiction is not destroyed because some of the defendant-claimants are citizens of the same state as the plaintiffs, Treinies v. Sunshine Mining Co., 1939, 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85.
 
 
 7
 Plaintiff, Dean Witter & Co., brought the interpleader action alleging it held 2000 shares of the stock of Blair Holdings Corp., pursuant to an escrow and that adverse claims had been made to the stock, in that Blair Holdings Corporation had issued and served on Dean Witter & Co., a writ of execution out of state actions No. 386,971 and 383,427,[1] upon all monies, credits, effects, debts due or owing E. J. Crofoot; and that the defendant, Phillip Barnett had by letter, made claim to 1600 of the 2000 shares, purporting to do so in his own behalf and as attorney for Bay City Bank and Trust Co.
 
 
 8
 Bay City Bank and Trust Co., hereafter called Bay City, and Phillip Barnett filed answer to the complaint as did the various Blair Companies heretofore described, and hereafter referred to as Blair. The District court issued its judgment discharging the plaintiff from the action, allowing attorney's fees and providing the fees should be a charge against the shares deposited in court.[2]
 
 
 9
 The ultimate issue in the case is the question of title to the shares. Blair claims them on three grounds; (1) under the express terms of the escrow and the stipulation pursuant to which they were deposited in the escrow, (2) upon the ground that under the terms of an arbitration and judgment entered thereon, Blair was entitled thereto, and (3) upon the ground that Blair, pursuant to a judgment in its behalf following the arbitration, had levied upon the shares.
 
 
 10
 Bay City and Barnett claim the shares upon the ground that Bay City had title thereto. For the purpose of what follows it should be noted that at no time did Bay City predicate any claim based upon a pledge lien on said shares.
 
 
 11
 The trial court found in favor of Bay City and ordered that Bay City be declared the owner of 1600 of the shares, and that they be delivered to Bay City or its attorney, Barnett.
 
 
 12
 As to the other 400 shares, of the 2000 involved, it was conceded they belonged to Blair, and the trial court so provided. No issue is therefore presented as to these 400 shares.
 
 
 13
 The facts behind the opening of the escrow into which the 2000 shares were deposited are complex. (See generally, Crofoot v. Blair Holdings Corp., 1953, 119 Cal.App.2d 156, 260 P.2d 156) but may be summarized as follows:
 
 
 14
 Crofoot had a business which he sold to Blair and as part of the consideration therefore received certain shares in the Blair companies. Crofoot pledged 20,000 of such shares to Bay City as security for a note in the sum of $35,000.[3]
 
 
 15
 Blair later contended there was fraud and deceit in the transaction by which Crofoot received the shares and brought an action for rescission and for damages against Crofoot. About the same time Blair passed out information concerning its contention as to how Crofoot had obtained the Blair shares. This had the effect of making it impossible for Crofoot to sell the shares on the market. Crofoot sued Blair for the conversion of some 51,725 of his shares of Blair stock, based on these activities of Blair.
 
 
 16
 Bay City, holder of Crofoot's note and with 20,000 shares pledged to it as security, was desirous of selling the shares to apply on its note, then in default. It encountered difficulty in selling the shares because of the pending litigation. It commenced an action, California case No. 383,427[4] against Blair to require the transfer of the shares to its name.
 
 
 17
 On February 8, 1949, in that action an order was made that Blair transfer this stock on its books into the name of Bay City to facilitate Bay City in selling the shares, upon condition that Bay City post a $50,000 bond.
 
 
 18
 The bond was posted and the 20,000 shares, held by Bay City as a pledge, were on March 5, 1949, issued by Blair in the name of Bay City. On March 9th and 11th, 1949, Barnett acting for Bay City, delivered the 20,000 shares to Dean Witter for sale, proceeds to be placed to the credit of Bay City. Between March 10, 1949 and March 16, 1949, Dean Witter sold 18,000 of the shares for $35,239.96. The 2000 shares remaining in Dean Witter's possession are the shares here involved.
 
 
 19
 Various other actions and claims were filed and by March of 1950 there were a series of actions pending both in California and New York courts, involving the issues above stated, and many more. Whereupon the parties, on March 6, 1950, entered into an arbitration agreement and appointed George E. Osborn, Professor at Stanford University, as the arbitrator, and referred all the actions to him for decision.
 
 
 20
 On May 19, 1950, and while the arbitration pended, the 2000 shares remained unsold. The parties then considered the problem of the renewal of the $50,000 bond, and the cost thereof, and in order to obviate the renewal of the bond, entered into a stipulation dated May 19, 1950, by which the 2000 shares were placed in an escrow with Dean Witter & Co. The escrow was then set up by means of a letter addressed to Dean Witter, signed by Blair and signed by Phillip Barnett, acting for both Bay City and Crofoot. The letter expressly incorporated the terms of the written stipulation entered into between the various parties, permitting the escrowing of the 2000 shares and obviating the necessity of a renewal of the $50,000 bond.
 
 
 21
 The stipulation was clear and precise. Among other things it was signed by Crofoot and provided that Crofoot agreed to guarantee and indemnify Blair to the extent of $15,000 for damage by reason of the recordation or transfer or the issuance of new certificates as required by the previous State court order in which the $50,000 bond was put up,-- in other words, indemnify for the transfer of the shares from the name of Crofoot to the name of Bay City.
 
 
 22
 The stipulation further provided, that '* * * E. J. Crofoot * * * further agrees to escrow forthwith 2000 shares of Blair stock in place and stead of said bond, being the said 2000 shares of stock which Crofoot received from Bay City on sale of collateral to pay its loan to Crofoot of approximately $35,000.' From the documentary evidence in the case, this sentence is clear. It referred to the 20,000 shares which Bay City had held as collateral, 18,000 of which had been sold and used to pay off the Bay City note of $35,000 and the 2000 shares were the remaining shares 'which Crofoot received from Bay City.' It will also be noted that the stipulation provided that Crofoot would escrow these 2000 shares.
 
 
 23
 The stipulation further provided, 'Said 2000 shares of stock shall be left in escrow in the possession of Dean Witter & Co., pending a written order releasing the same on order of Crofoot and Blair, or the order or award of said arbitrator directing said release.' It was further provided that nothing in the stipulation should alter the conditions of the arbitration agreement except that 'Bay City shall be considered withdrawn from the arbitration.' Thus, actually Bay City was then taken out of the arbitration and the arbitration proceeded thereafter between Blair, Crofoot, and other incidental parties.
 
 
 24
 The arbitrator heard the controversy, and prepared his award deciding the issues. Certain corrections were made by the California Superior court and the judgment was entered on the award in such court. On appeal to the District court of Appeal of the state of California, the judgment on the award was affirmed, Crofoot v. Blair Holdings Corp., supra. There was no express determination of the ownership of the 2,000 shares.
 
 
 25
 Against this backdrop of facts, Bay City and Barnett's contentions and Barnett's argument at the hearing of this case before this court are rather astounding. Bay City and Barnett claim that Bay City owned these 2000 shares and attempted to trace title by showing the delivery of the shares by Bay City to Dean Witter & Co., for the purpose of sale, that is the delivery of the 20,000 shares which it had acquired as a pledge, and the sale thereafter of 18,000 such shares. In contradiction to this position is the fact that Barnett was representing Crofoot in the various court proceedings and in the arbitration and was contending that Crofoot had owned 51,725 shares of Blair, which included the 2,000 escrowed shares, and Barnett and Crofoot were contending that Blair had converted these 51,725 shares.
 
 
 26
 It is uncontradicted in the record that Bay City on September 16, 1948, lent $35,000 to Crofoot and received from Crofoot a promissory note secured by a pledge of 20,000 shares of Blair stock. This transaction did not pass title to the shares to Bay City.
 
 
 27
 The general rule is stated in 41 Amer. Jurisprudence, page 603, Sec. 27:
 
 
 28
 'By the contract of pledge, the pledgor does not part with his general right of property in the collateral. The general property therein remains in him; only a special property vests in the pledgee. The pledgee does not acquire an interest in the property except as a security for his debt.'
 
 
 29
 The loan, execution of the note and the pledge occurred in Texas. Texas law is in accord with the general principles stated, San Angelo Hilton Hotel Co. v. B. B. Hail Building Corp., Tex.Civ.App., 60 S.W.2d 1049; Luckett v. Townsend, 3 Tex. 119. California law is in accord, Cross v. Eureka Lake & Yuba Canal Co., 1887, 73 Cal. 302, 14 P. 885. We need not decide whether Texas or California law applies to this situation.
 
 
 30
 Bay City's right was only a pledge right, dependent on possession. For reasons best known to itself, and probably to avoid further expense on the bond, it executed the stipulation whereby Crofoot placed the shares in escrow. Bay City's pledge right was then lost, Civil Code Sec. 2913; Palmtag v. Doutrick, 1881, 59 Cal. 154; 72 C.J.S., Pledges, § 19, p. 24. At all times Crofoot had title. Bay City's & Barnett's showing indicates nothing in the way of a transfer of the title from Crofoot to them. It consists of proof of the original note, the pledge, the efforts of Bay City to secure transfer of the shares so they might sell, the order directing transfer if bond was placed, the issuance of the bond, the issuance of the 20,000 shares in Bay City's name, the sale of 18,000 and the crediting in excess of $35,000 to Bay City and the execution of the stipulation whereby Crofoot was permitted to deal with his 2000 remaining shares.
 
 
 31
 The fact that the shares belonged to Crofoot is found in the arbitration proceedings. Quoting from Crofoot v. Blair Holdings Corp., supra, 119 Cal.App.2d at page 177, 260 P.2d at page 166, 'The arbitrator found that Blair blocked the sale by Crofoot of 31,725 shares, and also the sale of the 20,000 shares pledged with the Bay City Bank, thus converting 51,725 shares, which at $3.50 per shares comes to $181,037.50 less the $36,515 received ultimately on the sale of the Bay City Bank stock, leaving a balance of $144,522.50.' Thus, by the arbitration award, and the judgment thereon, affirmed by the appellate court on July 13, 1953, Crofoot obtained a judgment that Blair had converted shares belonging to Crofoot, including 2000 shares involved in this case.[5] To be converted, and for Crofoot to have recovery, they must have belonged to Crofoot.
 
 
 32
 In addition to the award to Crofoot for the conversion of the shares, 'There was also awarded to Crofoot $1,270.71 as reimbursement for a bond required to transfer the stock pledged to the Bay City Bank.' Crofoot v. Blair Holdings Corp., supra, 119 Cal.App.2d at page 180, 260 P.2d at page 168.[6]
 
 
 33
 The stipulation creating the escrow would entitle Blair to prevail herein, even if the record did not show, undisputed, the lack of title in Bay City. The stipulation provided that Crofoot agreed to escrow the 2000 shares, 'which Crofoot received from Bay City on the sale of collateral to pay its loan to Crofoot of approximately $35,000,' and that they should be left in the escrow pending a written order releasing the same, to be signed by Crofoot and Blair or the order or award of the arbitrator.
 
 
 34
 Crofoot, by his answer herein filed January 25, 1952, after the award of the arbitrator and after the 'Judgment on Corrected Award of Arbitrator' filed July 5, 1951, states that Crofoot 'claims no right, title or interest in any of the said 2000 shares.' The answer was prepared and signed by Barnett. We are not told the reason for Crofoot's apparent change of position after judgment on the award, or what his dealings with Barnett may have been.
 
 
 35
 Upon the disclaimer by Crofoot and under the express terms of the stipulation, the 1600 remaining shares in the escrow, theretofore deposited in court, should have been awarded to Blair.
 
 
 36
 We hold that under the express terms of the stipulation, and under the award and appellate decision, only Blair and Crofoot are concerned with the ownership of the 2000 shares, and particularly the 1600 shares now in issue; that the 1600 shares are not the property of Phillip Barnett or of Phillip Barnett, as attorney for Bay City, as is alleged in the Bay City answer. We need not pass on the effect of the execution run by Blair on the property of Crofoot in the hands of Dean Witter.
 
 
 37
 The judgment is reversed with directions to the trial court to enter judgment for Blair and for further proceedings not inconsistent with this opinion, awarding the 1600 shares in dispute, plus the 400 shares to which there is no issue, to Blair, subject to payment of the attorney's fees and costs in the sum of $562.00 hereafter awarded in this interpleader action; and with costs to Blair on this appeal.
 
 
 
 [1]
 These California state actions, and others in California and New York were the actions assigned to arbitration, referred to hereafter
 
 
 [2]
 The judgment below apportioned a fee of $500.00 plus $62.00 costs,-- $112.40 to be paid by Blair because of the 400 shares awarded to Blair, and $449.60 to be paid by Barnett and Bay City because of the 1600 shares awarded to them
 
 
 [3]
 The record in the case at bar shows the note was executed in Bay City, Texas, dated September 16, 1948 and on the note itself is a reference to the fact that it is secured by 20,000 shares of Blair stock
 
 
 [4]
 One of the actions later referred to arbitration
 
 
 [5]
 Crofoot v. Blair Holdings Corp., supra, shows the awards to various parties and for various contingencies. Blair was awarded $172.341.42 against Crofoot for breach of warranties, etc. This was the most favorable award to Blair and its election by Blair would preclude Blair from enforcing other awards. 119 Cal.App.2d at pages 178-179, 260 P.2d at pages 167-168
 Crofoot was awarded $144,522.50 against Blair for conversion of the stock Crofoot owned, but since this was based on conversion, the condition for enforcement was that Crofoot transfer to Blair 33,725 shares so converted. 119 Cal.App.2d at page 180, 260 P.2d at page 168.
 But throughout the decision, it is crystal clear that Crofoot owned the shares.
 
 
 [6]
 The award, p. 192, states, 'Crofoot, in order to obtain transfer of the 20,000 shares pledged to the Bay City Bank was required to put up a bond. The bond was in effect from March 4, 1949 to May 26, 1950, at a premium cost of $1000 per year. This amounted to $1,270.71. This sum is awarded to Crofoot.'