134 F.2d 725 (1943)
In re ALLIED PRODUCTS CO.
BARNETT
v.
MARYLAND CASUALTY CO.
CONTINENTAL CASUALTY CO.
v.
BARNETT.
Nos. 9286, 9301.
Circuit Court of Appeals, Sixth Circuit.
April 8, 1943.
Trafton M. Dye, of Cleveland, Ohio (Trafton M. Dye and Fackler & Dye, all of Cleveland, Ohio, on the brief), for Barnett.
Francis J. Amer, of Cleveland, Ohio (Clare M. Vrooman, Francis J. Amer, and Garfield, Daoust, Baldwin & Vrooman, all of Cleveland, Ohio, on the brief), for Maryland Casualty Co.
H. Frank VanLill, of Cleveland, Ohio (H. Frank VanLill and Orgill, Maschke, Wickham, Duffy & Loux, all of Cleveland, Ohio, on the brief), for Continental Casualty Co.
Before HICKS, MARTIN, and McALLISTER, Circuit Judges.
MARTIN, Circuit Judge.
One opinion will suffice for disposition of these two separate appeals, arising from *726 the bankruptcy proceedings in the matter of the Allied Products Company, bankrupt.
In No. 9286, the trustee in bankruptcy has appealed from an order of the District Court reversing, on certificate for review, the ruling of the Referee in Bankruptcy and sustaining the application of the Maryland Casualty Company for an order authorizing payment to it, by the Board of County Commissioners of Summit County, Ohio, of certain amounts due the bankrupt under two road contracts between the bankrupt and the county board.
In No. 9301, the Continental Casualty Company has appealed from an order of the District Court sustaining, on certificate for review, the Referee's denial of its claim to certain amounts due the bankrupt under two road contracts between the bankrupt and the State of West Virginia.

No. 9286
The appeal of the trustee in bankruptcy will be first considered. The Maryland Casualty Company became surety on performance bonds covering two road-paving contracts between the bankrupt and the commissioners of Summit County, Ohio, entered into respectively on March 31, 1939, and May 25, 1939. The bankrupt fully performed these contracts to the satisfaction of the commissioners, who made payments to the bankrupt as the work progressed to the extent that only $1,136.20, due the bankrupt on the first contract, and $3,052.14 on the second contract were unpaid at the date of bankruptcy. These sums comprise the stakes in controversy. From a subsequent contract between the bankrupt and the City of Cleveland, Ohio, and two subsequent contracts between the bankrupt and the United States Government, the performance of which was guaranteed by the Maryland Casualty Company, the surety, in consequence of the default in performance by the bankrupt, sustained and paid losses totaling $11,761.91.
It is not controverted that, until default in performance, the bankrupt had the right to collect and use, as it pleased, all amounts due and payable to it under the contracts. The first default by the bankrupt, under any of the contracts, occurred with respect to its contract with the City of Cleveland. This default happened after the bankrupt had fully performed its obligations under the Summit County contracts and after the sums here in controversy had become due the bankrupt.
The issue presented is whether the appellee, Maryland Casualty Company, has a prior claim over general creditors to these unpaid balances owing to the bankrupt by the Summit County Commissioners, in consequence of a clause contained in the applications originally made by the bankrupt to the appellee for suretyship on its required contractor's bond to the commissioners. This critical clause reads as follows: "In the event of claim or default under the bond(s) herein applied for, or in the event the undersigned shall fail to fulfill any of the obligations assumed under the said contract and bond(s), or in the event of claim or default in connection with any other former or subsequent bonds executed for us or at our instance and request all payments due or to become due under the contract covered by the bond(s) herein applied for, shall be paid to the company  and this covenant shall operate as an assignment thereof and the residue, if any, after reimbursing the company as aforesaid, shall be paid to the undersigned after all liability of the company has ceased to exist under the said bond(s) and the company shall at its option be subrogated to all rights, properties and interest of the undersigned in said contract, or contracts."
(1) Relying upon Southern Surety Co. v. Town of Greeneville, 6 Cir., 261 F. 929, 931, the appellant trustee contends that the right of the appellee surety company to the funds in controversy ceased when the liability of the latter, as surety on the bonds, to the Summit County Commissioners terminated on October 23, 1939, upon full performance by the bankrupt of its undertakings under the two road contracts. The point is not well taken.
The opinion of this court, cited by appellant, does not support its position for the reason that, in the application of the contractor for a surety bond in the Southern Surety case, it was covenanted, with respect to the assignment to the surety of funds due or to become due by the obligee to the contractor, that, "in the event (the surety) company be released from liability on account of said bond and suffer no loss thereunder, then this assignment shall become at once null and void." The applications for the surety bonds in the instant case contain no similar provision.
It should be noted, moreover, that, in the earlier case decided by this court, the assignment was limited to a single contract, while here, the assignments expressly extend *727 to all of the bonds upon which the appellant should become surety for the bankrupt's performance.
Lacy v. Maryland Casualty Co., 4 Cir., 32 F.2d 48, presented an issue interesting in its similarity to the proposition propounded here. In that case the contractor, in his application to the surety, assigned to the surety the retained percentage under the contract, not only for any loss sustained on the bond covering the particular project, but also for loss sustained upon any other bond executed by the surety for the contractor. It was held that the retained percentage remaining after reimbursement of the surety for the expense of completing the contract after the contractor had defaulted could be applied by the surety company toward its losses on other contracts, upon which it had become surety for the contractor, not under the equitable principle of subrogation, but as assignee; and that the assignment to the surety had priority in bankruptcy over subsequent assignments to creditors. The Southern Surety case, supra, was distinguished upon like grounds to those upon which it has been differentiated here.
(2) The next question and the real issue in the case is whether, under Ohio law, a present assignment of funds, which may accrue and be ascertained in the future upon the happening of a specified event (in this case, default upon another contract), is valid and entitled to priority over the claims of subsequently attaching creditors of the assignor who became creditors without notice of the assignment. The answer is that, in Ohio, the assignment is valid, and has priority over the attaching creditors' claims.
The assignment involved here is, from its terms, a present assignment and not a mere promise to assign in the future. The trustee in bankruptcy is in the same position as if he were an attaching creditor.
In Copeland v. Manton, 22 Ohio St. 398, 404, a firm of sub-contractors, in payment of the debt owed them by the principal contractor, obtained from him an assignment of the amount due the contractor by the owner of the building, which had been constructed under the contract. No notice of this assignment was given to the owner or to the creditors. Another firm of subcontractors, to whom the principal contractor was also indebted, attached in the hands of the owner, under the mechanics' lien law, the fund which the owner owed to the principal contractor. Judgment was upheld in favor of the assignee sub-contractors in the amount of their claim against the contractor on account of work and material furnished in the erection of the building; thus recognizing the priority of the assignee sub-contractor's claim over the claims of the attaching sub-contractors. The Supreme Court of Ohio said: "It is a fundamental principle that an attaching creditor can stand on no better footing, as against bona fide purchasers or assignees of his debtor, than the latter does at the time of the attachment or garnishment. And it is well settled that where an assignment of a chose in action is made on good consideration and bona fide, the creditors of the assignor can not avoid or defeat it by garnishment or other similar process, although the debtor had no notice of the assignment previous to the attachment, * * *."
In Warren Guarantee Title & Mtg. Co. v. Williams, 27 Ohio App. 505, 161 N.E. 551, the Court of Appeals for Summit County held that the assignment, in good faith for value, of an interest in a pending suit, which suit proceeds to judgment in the name of the assignor is valid as against an attaching creditor, where the assignment is made prior to the time of the attachment, although no notice of the assignment is given to the judgment debtor or attaching creditor prior to the service of the attachment, but is given before the judgment is paid.
Another Court of Appeals in Ohio, that for Cuyahoga County, in Kittinger Witt Co. v. Brookins, 35 Ohio App. 266, 172 N. E. 297, based its holding upon the same underlying principle.
Ohio cases cited by appellant, involving mortgages of property or chattels where possession was essential to ascendency of the mortgagee over subsequently attaching creditors, are not pertinent where an assignment is, as in the instant case, made of intangible property or money in the hands of a third party.
(3) The Referee in Bankruptcy decided that, upon the authority of Benedict v. Ratner, 268 U.S. 353, 45 S.Ct. 566, 69 L.Ed. 991, the assignments to the appellee surety company were void as against the appellant trustee in bankruptcy, inasmuch as the surety had permitted the bankrupt to exercise unfettered dominion over the proceeds of the Summit County contracts up to the date of the bankruptcy. In reversing *728 the referee's ruling, the District Judge found that no dominion over the funds had been exercised by the bankrupt after its default, which was the event necessary to make the assignment operative. The evidence supports this finding.
In Benedict v. Ratner, supra, a present unconditional assignment was involved. The assignor was permitted to collect the assigned accounts and was not required by the terms of the assignment to apply such collections on the secured debt, except upon specific direction of the assignee. Nevertheless, the assignee had the right to enforce the assignment before maturity of the loan. By the law of New York  which governed  a transfer of property as security for a debt with reservation in the transferor of the right of disposition of the property and the application of its proceeds to his own uses was fraudulent and void as to creditors.
In the case at bar, the assignments rested in operative effect upon a condition precedent, namely, default in the performance by the bankrupt of its contractual obligations for which the assignee stood liable as surety. The appellee surety company did not permit the bankrupt to collect the funds due it from the Summit County contracts, after the bankrupt's default on the Cleveland contract, and notified the County Commissioners to withhold payment to the bankrupt of all estimates and retained percentages. By the law of Ohio, which governs here, the assignments, as has been shown, were valid and prior in right to the claims of subsequently attaching creditors, and therefore, have priority over claims of the trustee in bankruptcy. Compare In re Cincinnati Iron Store Co., 6 Cir., 167 F. 486.
The District Court correctly concluded that the doctrine of Benedict v. Ratner has no applicability here.

No. 9301
The Continental Casualty Company, appellant in cause 9301, guaranteed as surety the performance by the bankrupt of three road-paving contracts entered into, in sequence, with the State Road Commission of West Virginia. By the same method in all material aspects as that adopted between the bankrupt and the surety in the Maryland Casualty case (No. 9286), the bankrupt executed an indemnity agreement assigning to the surety all retained percentages and all amounts due the bankrupt under any and all of the contracts, to be effective in the event of and at the time of breach by the bankrupt of any one of the contracts. The assignments were expressly conditioned upon the default of the bankrupt contractor. Like the assignments in the Maryland Casualty case, those in this case were present assignments of funds which might accrue and be ascertained in the future, upon the happening of a specified event  that is, default.
The bankrupt fully performed the first two contracts, with total undrawn balances of $6,212.49 due and owing it. The bankrupt then entered into the third contract, which was completed before bankruptcy ensued; but all bills payable by the bankrupt on account of the contract had not been liquidated prior to the date of bankruptcy. The surety received from the State of West Virginia the balance due the contractor on the third contract, and paid claims against the bankrupt arising out of that contract, with a resultant net loss to the surety in excess of $4,008.78.
The issue here for decision is whether the surety, claiming by virtue of the assignments, is entitled to receive that portion of the balances totaling $6,212.49, due the bankrupt from its performance of the first two contracts, as will fully restore its loss as surety on the third contract.
The Referee in Bankruptcy found, as matter of fact, that the surety had paid no claims on account of the third contract prior to the institution of the bankrupt's reorganization proceedings and had received no notice of any such claim prior to that time. Nor had the surety, prior to the bankruptcy proceedings, asserted any claim to the retained balances accruing from the first two contracts. It was found that the surety had given no notice of a claim to these balances, either to the bankrupt or to the State of West Virginia, until after the date of the original petition for reorganization in bankruptcy.
On these findings, as well as on other grounds, the Referee denied the claim of the surety to the balances in controversy. The District Judge confirmed the Referee's finding that the surety had failed to establish, as a matter of fact, that default on the third contract occurred prior to bankruptcy. The Referee's finding that there had been no such default was deemed determinative of the case, the court pointing out that it had already been decided in the Maryland Casualty Company case that assignments of like import were effective only in the event of and upon default by the bankrupt.
*729 It is obvious that if no default in any of the contracts occurred prior to the bankruptcy, the assignments to the surety could not become effective. The District Court has confirmed the finding of fact of the Referee that default did not occur prior to that time. Concurrent findings of fact of a referee in bankruptcy and a District Judge will not be set aside by a Circuit Court of Appeals on anything less than demonstration of plain mistake. See Kowalsky v. American Employers Ins. Co., 6 Cir., 90 F.2d 476, 480, and cases there cited.
There has been no showing in this case that the Referee and the District Judge were plainly mistaken in their concurrent finding of the decisive fact. Upon the evidence in the case, a contrary finding below would have been clearly erroneous.
The judgments of the District Court in both cases (No. 9286 and No. 9301) are affirmed.