ALLEN, Judge.
Appellant timely files this appeal from an adverse judgment in the court below.
This case was tried without a jury on the basis of a “Stipulation of Facts.”,
Basically, the appellee bonded one Earl R. Lamb on June 12, 1962, for the construction of an addition to St. Petersburg Junior College, St. Petersburg, Florida. This bond in the amount of $961,180.00 was given to the Board of Public Instruction of Pinellas County, Florida. Earl R.' Lamb executed and delivered to appellee an Agreement of Indemnity on June 12, 1962.
Subsequent to the bond and indemnity agreement, appellee issued similar bonds on Earl R. Lamb for the construction of the Venice School Campus in Sarasota, Florida, and the Azalea Junior High School in Pinel-las County.
On August 1, 1963, the Board of Public Instruction of Pinellas County, Florida, accepted the St. Petersburg Junior College job and held at that time more than Sufficient reserves on said job to make final payments to all subcontractors and materialmen, without loss or liability by appellee as bondsman. On December 9, 1963, the School Board architect certified said Junior College contract as having been completed in accordance with the law and the regulations of the State Board of Education, and with the approved plans and specifications and approved amendments. On December 26, 1963, the State Superintendent of Public Instruction issued his Certificate of Final Inspection.
On May 25, 1964, Earl R. Lamb'was authorized to collect the contract reserve in the amount of $5,284.20 free and clear; of any further encumbrances and liens. This is the date upon which settlement was made to the last remaining materialmen. Earl R. Lamb *133 elected not to collect the contract reserve because he was going to bring suit against the Pinellas County Board of Public Instruction for $3500.00 in back charges.
On December 14, 1964, appellee notified the Pinellas County Board of Public' Instruction that it intended to enforce Earl R. Lamb’s assignment of contract funds on the St. Petersburg Junior College contract pursuant to Paragraphs 4 and 5 of the indemnity agreements. This enforcement was prompted by the default of Earl R. Lamb in November, 1964, on the Azalea Junior High School and Venice School Campus contracts in excess of $50,000 over and above contract reserves collected.
Prior to May 25, 1964, Earl R. Lamb had retained appellant and appellant’s law firm to represent him in his dealings with the Board of Public Instruction of Pinellas County. On March 3, 1966, Earl R. Lamb, by absolute assignment assigned the appellant all of his right, title and interest in and to said Junior College contract reserve in payment for legal services previously rendered by appellant and the law firm of Ellis, Logan & Page on behalf of Lamb and for the benefit of Lamb. The total sum of $5,-284.20 representing the full contract reserve on the St. Petersburg Junior College project has been released by the Board of Public Instruction of Pinellas County and is presently being held in trust by the appellant pending the outcome of this suit.
The pertinent portions of the performance and payment bond issued by appellee in connection with the Junior College contract are as follows:
“NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that if the said Principal shall fully indemnify the Owner from and against any failure on his part faithfully to perform the obligations imposed upon him under the terms of said contract free and clear of all liens arising out of claims for labor and material entering into the work, and if the said Principal shall pay all persons who shall have furnished labor or material directly to the Principal for use in the prosecution of aforesaid work, * * * then this obligation to be void, otherwise to remain in full force and effect;
“PROVIDED, HOWEVER, that no action, suit or proceeding shall be had or maintained against the Surety on this instrument unless the same be brought or instituted and process served upon the Surety within two years after completion of the work mentioned in said contract, * He * ”
The pertinent portions of the indemnity contract given by Lamb to appellee are as follows:
“The undersigned, hereinafter called the indemnitor (s), in consideration of [the Company’s] * * * consenting to execute such bonds or bonds as are herein applied for, it being understood that this application shall be deemed to cover all bonds or other obligations finally executed by the Company in connection with the contract hereinabove described [i. e., the Junior College construction contract], hereby covenant and agree with the Company * * * as follows:
« * *
“Second: The indemnitor(s) will at all all times indemnify and keep indemnified the Company, * * * against any and all damages, loss, * * * which it shall or may at any time sustain or incur by reason or in consequence of its suretyship or procurement of suretyship in connection with all bonds or similar obligations referred to hereinbefore, [i. e., all bonds issued in connection with the Junior College job] * * *.
« * * *
“Fourth: That the said company * * * shall be subrogated to all rights, privileges and properties of the principal (s) in said contract, and said principal (s) do hereby assign, transfer and convey to said company all the deferred payments and retained percentages arising out of this contract, * * * hereby agreeing that all *134 such monies * * * shall be the sole property of the said company, and to be by it credited upon any loss, damage, charge and expense sustained or incurred by it as above set forth under any bond of surety-ship it has executed for the undersigned principal(s).
“Fifth: Any security taken by the company, in connection with said bond, including the assignment of monies coming due from the contract, * * * may be held by the company, as a protection against any bond heretofore or hereafter executed by the company on behalf of the undersigned principal(s). * * * ” (Emphasis added.)
 The first issue we are confronted with is how long does this bond remain in effect after completion of the performance of the contract? We were called upon in a previous case before this court to decide the statute of limitations of such a performance bond. In Aetna Casualty and Surety Company v. Board of Public Instruction of Pinellas County, Fla.App.1967, 195 So.2d 41, it was held that there was a one year statute of limitation in which a suit could be brought against the general contractor or his surety. Fla.Stat. § 255.05, F.S.A. This meant,one year from the date of the completion of the contract.
According to the facts the effective date of completion of this contract would be December 26, 1963. This is the date of the Certificate of Final Inspection by the State Superintendent of Public Instruction and the release of the final payment on the contract to Earl R. Lamb. One year from this effective date would be December 26, 1964. In effect, the appellee in this case would remain liable on its bond until December 26, 1964. Appellee’s liability would run co-extensive with this bond until completion of the contract and one year after completion. Since appellee would be liable on the bond for this period of time, it is only reasonable that any rights which appellee might have on the bond would extend for one year after the date of completion of the contract.
Appellee notified the Board of Public Instruction by letter on December 14, 1964, that it was going to enforce its rights against the contract funds of Earl Lamb pursuant to paragraphs 4 and 5 of the indemnity agreement, supra. This notification was made prior to December 26, 1964, well within the one year limitation period. A copy of the letter of notification was sent to appellant or Lamb’s attorney.
Both appellant and appellee were unable to cite any authority to us concerning this problem as presented in this case. Our own independent research has failed to disclose any authority for this problem.
In the final decree, the trial judge cited as controlling the case of In re Allied Products Co., 6th Cir. 1943, 134 F.2d 725. The appellee also contends that this case is controlling, as well they might. The appellant cites as controlling the case of Southern Surety Co. v. Town of Greeneville, 6th Cir. 1920, 261 F. 929.
In the Allied case, supra, a clause similar to paragraphs 4 and 5 of the present indemnity agreement was construed. The rule was set down that:
“Where a contractor agreed that in the event of a claim or default in connection with any former or subsequent bonds executed by a surety company for a contractor all payments due or to become due should be paid to the surety company, the right of the surety company to moneys due on contracts fully performed by the contractor did not terminate but continued where contractor defaulted on a third contract with another which surety company was required to make good.”
The Greeneville case, supra, was cited in the Allied case and distinguished. It was the appellant’s contention in the Greeneville case that the right of the appellee surety company to the funds in controversy ceased when the liability of the surety company terminated upon full performance of the contract by the contractor. The appellant in the instant case propounds the same contention- *135 The court in the Allied case, supra, stated that this contention was not well taken for the reason that the covenant found in the Greeneville case was not present in the agreement in the Allied case. The covenant referred to is one in which the “ * * * assignment to the surety of funds due or to become due by the obligee to the contractor, that, ‘in the event (the surety) company be released from liability on account of said bond and suffer no loss thereunder, then this assignment shall become at once null and void.’ ” In re Allied Products, 6th Cir. 1943, 134 F.2d 725, 726.
In the instant case no provision was found in the indemnity agreement. Therefore, we must hold that the Allied case, supra, is controlling on this set of facts.
For the above stated reasons we find that the decree of the lower court is without error.
Affirmed.
LILES, C J., and PIERCE, J., concur.