SOUTHERN SURETY CO. v. TOWN OF GREENEVILLE et al.

(Circuit Court of Appeals, Sixth Circuit. January 6, 1920.)

No. 3288.

1. PRINCIPAL AND SURETY ⬤⇒59—INTENTION OF PARTIES GOVERNS CONTRACT.

In determining the rights of a surety under an application for a surety bond, the intention of the parties must govern.

2. INSURANCE ⬤⇒59—CONTRACT MOST STRONGLY CONSTRUED AGAINST SURETY COMPANY PREPARING IT.

In case of ambiguity in an application on which surety company issued a bond, the application is to be most strongly construed against the surety company, which drew the same.

3. CONTRACTS ⬤⇒156—SPECIAL TERMS CONTROL GENERAL TERMS.

It is the ordinary rule in construction of contracts and written instruments that special terms will control general terms.

4. PRINCIPAL AND SURETY ⬤⇒175—SURETY COMPANY CANNOT APPLY COLLATERAL RECEIVED UNDER APPLICATION FOR ONE BOND TO OTHER LIABILITIES.

Where an application for a bond signed by a public contractor contained an agreement to indemnify the surety company against loss of every nature, not only by virtue of the bond applied for, but by reason of the surety company's execution of other bonds, and for better protection required the contractor to assign all interest in tools on the work and the money to be due on the contract, etc., but provided, in event the surety should be released from liability on account of the bond, the assignment should become null and void, held, that the surety could not, under the general provisions above and other similar ones following, apply the collateral to claims independent of the particular bond issued.

Appeal from the District Court of the United States for the Eastern District of Tennessee; Edward T. Sanford, Judge.

Bill of interpleader by the Town of Greeneville against the Southern Surety Company and the Southern Asphalt & Construction Company. From a judgment in favor of the Southern Asphalt & Construction Company, the Southern Surety Company appeals. Affirmed.

John R. Aust, of Nashville, Tenn., for appellant.

Susong & Biddle and Shoun & Trim, all of Greeneville, Tenn., and Forney Johnston, of Birmingham, Ala., for appellees.

Before KNAPPEN and DENISON, Circuit Judges, and KILLITS, District Judge.

KNAPPEN, Circuit Judge. The surety company became surety upon the construction company's bond given to the town of Greeneville under a contract for certain public work. The construction company's application to the surety company to sign the bond contained an assignment of certain personal property as security. The surety company contended that this security was intended to protect it from liability, not only on account of the bond given under this application, but on account of other bonds which it had given to other municipalities for the construction company's benefit, under at least one of which the surety company seems to have incurred liability through

the construction company's default. The construction company denied that the personal property was intended to secure its liability on account of other bonds. The surety company incurred no loss upon the bond given under the application, or on account of the Greeneville contract. The town accordingly paid to the construction company the amount owing the latter above that claimed by the surety company, and, upon issue joined under a bill of interpleader filed by the town, the court below awarded this surplus fund ($5,500) to the construction company's trustee in bankruptcy. The surety company appeals. The question presented relates to the construction of the contract contained in the application, in the light of the conditions existing at the time.

The construction company's application to the surety company for bond to secure the Greeneville contract contained 11 covenants. By the second covenant the construction company agreed to indemnify the surety company against, and to save it harmless from, liability and loss of every nature which the surety company might at any "time sustain or incur," not only by virtue of the bond then and there applied for, but by reason of the surety company's execution for the construction company "of any and all other bonds" executed for the construction company at its "instance and request." By the fourth covenant the surety company (in case of the construction company's failure to comply with or perform "any covenant hereof, or of the contract which the [surety] company is hereby requested to guarantee") was authorized to take such steps as it might "deem necessary or proper to obtain due performance" of the contract referred to, "or its release from all liability under any and every such bond and contract, and to secure and further indemnify itself against loss." Then follows what is here called the second bracket or paragraph of this fourth covenant, by which the construction company in terms assigned, transferred, and conveyed to the surety company for its "better protection" all the former's interest in "all the tools, plant equipment, and materials of every nature and description that we may now or hereafter have upon said work, or in, on or about the site thereof, including as well materials purchased for or chargeable to said contract, which may be in process of construction, in storage elsewhere, or in transportation to said site," as well as "all payments, funds, moneys, or property due or to become due to the undersigned, as provided in said contract," together with all the construction company's rights in all subcontracts incident thereto and "all materials embraced therein," with authority in the surety company, in case the construction company should fail to complete "*said work* in accordance with the terms of the contract covered by such bond, or in event of any default on the part of [the construction company] *under the said contract*" to take possession of "said tools, plant equipment, materials, and subcontracts, and enforce, use, and employ such possession." The concluding sentence of this fourth covenant reads thus: "*In the event the [surety] company be released from liability on account of said bond and suffer no loss thereunder, then this assignment*

*shall become at once null and void."* [1]  The seventh covenant reads as follows:

"Seventh. That these covenants and also all collateral security, if any, at any time deposited with the company concerning the said bond, or any other former or subsequent bonds executed for us or at our instance, shall, at the option of the company, be available in its behalf and for its benefit as well concerning the bond or undertaking hereby applied for, as also concerning all other former or subsequent bonds and undertakings executed for us or for others at our request."

If the seventh covenant controls, the surety company was entitled to the $5,500 in question, and the decree must be reversed. If, however, the concluding sentence of the second paragraph or bracket of the fourth covenant dominates, the decree is right, and must be affirmed. The two provisions are plainly inconsistent.

It will be seen that the second covenant, while containing an agreement of indemnity cove ing, not only the bond then being applied for, but others as well, contains no provision for security by way of pledge or mortgage; also that the first paragraph of the fourth covenant, while authorizing the surety company (on the construction company's failure to perform "any covenant hereof" or of the construction contract) to "secure and further indemnify itself against loss," likewise omits any mention of property pledged or mortgaged. And the second paragraph of the fourth covenant, which contains the assignment of the "tools, plant equipment, and materials" relating to the Greeneville contract, and of the proceeds derivable therefrom, nowhere suggests that the security thereby created shall extend to any other obligation; while, on the contrary, as already shown, its concluding paragraph expressly makes the assignment void if the surety company shall sustain no loss on the specific bond then being applied for, viz. that relating to the Greeneville contract.

The District Judge based his construction of the meaning of the contract upon this reasoning:

"However, the assignment clause, commencing with the words 'and for the better protection' and ending with the words 'null and void' although inserted as a separate paragraph between the fourth and fifth covenants in the application, is not, in itself, in any sense a covenant, but purports to be a present assignment taking effect, as specified, without more, and not containing the word 'covenant' or any equivalent thereof. The application contains various specific covenants, which are in the form of future agreements preceded by the word 'that.' The language of the seventh covenant making all covenants of the stipulation available at the option of the surety company in case of the asphalt company's default under other bonds, is fully satisfied by this rendering applicable, according to its own terminology, the several specific covenants contained in the application, without more. To construe the seventh covenant, as also rendering available to the surety company not merely the covenants contained in the application, but also the assignment clause contained in a separate paragraph, not in any way referred to or constituting a covenant would not only be to go beyond the letter of the seventh covenant, but would also be in direct conflict with the concluding clause of the assignment clause itself, reading: 'In the event the [surety] company be released from liability on account of said bond and suffer no loss thereunder, then this assignment shall become at once null and void.'

---

[1] All italics in this opinion are ours.

"As the construction of the seventh covenant for which the surety company contends, would [not (?)] only be direct conflict with this provision in the assignment clause and render the same nugatory, but as the application is executed on a printed blank of the surety company itself, and must hence, under well-settled rules, be construed in case of doubt most strongly against it, I hence conclude that it did not operate to render available to the surety company the assignment of the payments under the Greeneville contract for the purpose of securing any liability to it from the asphalt company by reason of the execution of bonds in reference to contracts at other places."

[1-4] The question is, of course, one of intention of the parties. Although there is much to be said in favor of a contrary view, that taken by the District Court seems to us the better one (whether or not the assignment clause contained in the second bracket of the fourth covenant may itself be called a covenant), supported, as it is, by the prominent considerations (a) that the surety company drafted the contract, which must therefore be construed most strongly against it; (b) that the language of the second bracket of the fourth paragraph in express terms *confines the security to the suretyship then and there applied for,* viz. with respect to the Greeneville contract; (c) that the property assigned as security for the suretyship contract then applied for manifestly related only to property or supplies to be used in connection with the Greeneville contract, and presumably with the idea that it should be used by the surety company in the completion of that work, there being, indeed, no provision for enforcing that security, except in case of default under the Greeneville contract; and (d) that the remaining provisions relating to protection of the surety refer to bonds or undertakings, as distinguished from pledges of personal property, notwithstanding the fact that no such personal bond or undertaking was given by the construction company in connection with the Greeneville surety bond. As against these considerations, the broad and general language of the seventh paragraph, which makes no specific mention of the assignment in question, seems not enough to overcome the evidence of a contrary intent, otherwise so expressly declared. To hold otherwise would be to make the general prevail over the particular and specific, thus contravening the usual rule of construction.

We find nothing in the action of the town, following the service upon it by the surety company of the notice of assignment, which could give the surety company a prior lien for its protection from losses under other bonds.

The decree of the District Court is affirmed.