## STREET v. PACIFIC INDEMNITY CO.
### No. 6675.

Circuit Court of Appeals, Ninth Circuit.
Sept. 7, 1932.

Clarence A. Linn, of San Francisco, Cal., for appellant.

Milton Newmark, of San Francisco, Cal., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges.

SAWTELLE, Circuit Judge.

This appeal is from an order of the District Court confirming the order of the referee in bankruptcy refusing to proceed summarily for lack of jurisdiction.

On the 11th of June, 1929, the county of Alameda, state of California, acting by and through its board of supervisors, duly authorized, entered into a contract with J. F. Collins, the bankrupt, whereby said J. F. Collins agreed to do certain road work for the county of Alameda for a stipulated price and to give a bond for the faithful performance of such work. The bankrupt applied to the Pacific Indemnity Company, appellee herein, to write said bond, which was issued to him on the 11th of June, 1929. Contained in the application for the bond, which forms a part of the contract between J. F. Collins, the principal, and Pacific Indemnity Company, the surety, is the following:

"Third: * * * This assignment shall be in full force and effect as of the date hereof: (1) Should the said principal (s) fail to pay any premium charge when due, or should they fail or be unable to complete, in accordance with its terms, any contract covered by a bond of this Company, or in the event the said principal (s) abandon the work under, or fail to comply with the terms or conditions of any such contract. (2) If the said principal, being an individual, dies, absconds, is a fugitive from justice or is convicted of a felony. (3) If the principal (s) fail to pay bills incurred on the work, when they become due and payable, whether the Company may be liable for such bills or not. (4) If any proceedings are brought against the principal (s) alleging that they are insolvent, or if any receiver or trustee for the benefit of creditors is appointed, whether such principal (s) are insolvent or not. (5) If any proceedings are brought which deprive the principal (s) of the use of any part of the equipment used in connection with the work under their contract so as to hinder, delay or impede the normal and satisfactory progress of the work.

"Fourth: That the said Company, as surety on said bond, as of this date, shall be subrogated to all rights, privileges and proper-

ties of the principal (s) in said contract, and said principal (s) do hereby assign, transfer and convey to said Company all the deferred payments and retained percentages arising out of this contract, and any and all monies and properties that may be due and payable to said principal (s) at the time of the happening of any of the occurrences mentioned in clauses one, two, three, four and five of the next preceding paragraph, or that may thereafter become due and payable to said principal (s) on account of this contract or on account of extra work or materials ˙supplied in connection therewith, hereby agreeing that all such monies and the proceeds of such payments and properties shall be the sole property of the said Company, and to be by it credited upon any loss, damage, charge and expense sustained or incurred by it as above set forth under any bond of suretyship it has executed for the undersigned principal (s). This agreement shall not, nor shall acceptance by the Company of payment for its suretyship, nor agreement to accept, nor acceptance by it at any time of other security, nor assent by it to any act of the indemnitor (s), or of any person acting on behalf of the undersigned in any way abridge, defer or limit its rights to be subrogated to any right or remedy, nor limit or abridge any right or remedy which the Company otherwise might or may have, acquire, exercise or enforce, nor create any liability on the part of the Company which would not exist were this agreement not executed.

"Fifth: Any security taken by the Company, in connection with said bond, including the assignment of monies coming due from the contract, and the assignment of equipment and materials used on or in connection with such contract, may be held by the Company, as a protection against any bond heretofore or hereafter executed by the Company on behalf of the undersigned principal (s), and the Company may sell or realize upon the said collateral at its discretion, at public or private sale, and with or without notice to the indemnitor (s) of the time or place of such sale, for the purpose of protecting itself against any claim, demand or loss under the said bond, or any other bond so outstanding, and after indemnifying itself fully for any loss incurred on any bond issued at the request of the said principal (s), any balance, after such reimbursement, shall be paid to said principal (s), after all liability of the Company has ceased to exist under said bond or bonds."

A petition to have J. F. Collins adjudicated an involuntary bankrupt was filed in the United States District Court on the 8th day of October, 1929. On the 17th day of October, 1929, the bankrupt executed an assignment to the Pacific Indemnity Company, appellee herein, of all moneys due to him under and upon the last estimate of completed work upon the contract, which estimate had been submitted to the county of Alameda on October 2, 1929. The board of supervisors, upon receipt of this assignment, passed a resolution accepting the same, and directing that the warrants covering such estimate be made payable to Pacific Indemnity Company as assignee of J. F. Collins. On October 22, 1929, three warrants were so drawn and delivered to appellee, totalling $6,-327.07, and on the voucher it˙was indicated that the payment was pursuant to estimate No. 4 dated October 2, 1929. On December 24, 1929, the work under the contract having been completed, a fourth warrant was drawn in like manner for $16,438.58 and delivered to appellee.

J. F. Collins was adjudged a bankrupt on November 26, 1930, and the appellant was appointed trustee in bankruptcy on January 7, 1931. On the 25th of February, 1931, the trustee filed his petition praying for a summary order of the referee requiring the appellee herein to pay to the trustee in bankruptcy the moneys received by it from the county of Alameda on October 22 and December 24, 1929. The appellee entered a special appearance, and objected to the jurisdiction to proceed summarily on the ground that it was an adverse claimant whose rights could be determined only in a plenary action. This objection to the jurisdiction was sustained by the referee, and his order was confirmed by the District Court, from which decision the trustee has appealed.

The appellant contends that at the time of filing the petition in bankruptcy the money here sought to be recovered by the trustee was in the possession of the county of Alameda, being held for the account of the bankrupt, and therefore in the constructive possession of the bankruptcy court and subject to the summary jurisdiction thereof. It is his contention that the money was paid by the county to appellee pursuant to the assignment dated October 17, 1929, which was nine days after the filing of the petition in bankruptcy, at which time the money was already in custodia legis, and therefore could not be affected by said assignment.

The authorities are clear that the summary jurisdiction of the bankruptcy court attaches at the time the petition in bankruptcy is filed. Mueller v. Nugent, 184 U. S. 1, 22 S. Ct. 269, 46 L. Ed. 405; Acme Harvester Co. v. Beekman Lumber Co., 222 U. S. 300, 32 S. Ct. 96, 56 L. Ed. 208; Lazarus, Michel & Lazarus v. Prentice, 234 U. S. 263, 34 S. Ct. 851, 58 L. Ed. 1305; Gamble v. Daniel (C. C. A.) 39 F.(2d) 447. It therefore becomes necessary to determine the status of the money herein involved at that time; namely, October 8, 1929. If at the time of filing the petition in bankruptcy the appellee had been in possession of the moneys which are now in its possession, there would be no question but that there would be no summary jurisdiction in the bankruptcy court in regard thereto. However, the possession of the moneys was not given to appellee until after the petition had been filed. Jurisdiction to proceed summarily in the bankruptcy court is dependent upon possession of the property. Board of Trade of City of Chicago v. Johnson, 264 U. S. 1, 44 S. Ct. 232, 68 L. Ed. 533; Taubel-Scott-Kitzmiller v. Fox, 264 U. S. 426, 44 S. Ct. 396, 68 L. Ed. 770. In dealing with this question of possession essential to jurisdiction to proceed summarily, Justice Brandeis, in the last-cited case, said at page 432 of 264 U. S., 44 S. Ct. 396, 398, 68 L. Ed. 770:

"The possession, which was thus essential to jurisdiction, need not be actual. Constructive possession is sufficient. It exists where the property was in the physical possession of the debtor at the time of the filing of the petition in bankruptcy, but was not delivered by him to the trustee; where the property was delivered to the trustee, but was thereafter wrongfully withdrawn from his custody; where the property is in the hands of the bankrupt's agent or bailee; where the property is held by some other person who makes no claim to it; and where the property is held by one who makes a claim, but the claim is colorable only. As every court must have power to determine, in the first instance, whether it has jurisdiction to proceed, the bankruptcy court has, in every case, jurisdiction to determine whether it has possession, actual or constructive. It may conclude, where it lacks actual possession, that the physical possession held by some other persons is of such a nature that the property is constructively within the possession of the court."

The conduct of the parties prior to the filing of the petition is revealed by the following testimony of the bankrupt: "The estimate of October 2, 1929, had not been paid. I never received the money for the work represented by the estimate of October 2d, 1929. Prior to that estimate I have drawn the money from the County of Alameda whenever it became due and placed it in my own bank account and used it for my own purposes."

On the day the petition was filed, there was due on the contract the sum of $6,327.07, which was later paid to appellee. As to this sum the bankruptcy court obtained constructive possession, unless the assignment contained in the application for the bond was sufficient to immediately transfer ownership thereof to the assignee, appellee.

In a recent case, In re Borok, 50 F.(2d) 75, 77, the Circuit Court of Appeals for the Second Circuit dealt with a similar case involving an assignment of book accounts. Circuit Judge Swan, speaking for the court, there said: "It is argued by the trustee that, despite the assignment, all accounts outstanding on the date of the petition remained in the 'possession' of the bankrupt and so fall within the doctrine of property in custodia legis, as to which the bankruptcy court has summary power. One cannot speak of 'possession' of a chose in action in the same sense as of tangibles; but if such terminology is to be used it would seem that the bankrupt was as much in 'possession' of the assigned accounts as he could be of any chose in action. He had the right to collect from the debtors and to use the proceeds as he saw fit. The debtors had received no notification of the assignment; and Mayerson, though the agreement declared him to be irrevocably constituted the assignor's attorney for collection, was not to use this power unless the assignor was in default under the agreement, and there is no suggestion that default had occurred prior to the filing of the petition. Under such circumstances we believe that the bankruptcy court has power to determine summarily the respective rights of the trustee and the assignee in respect to the assigned accounts outstanding at the date of the petition."

Appellee seeks to distinguish In re Borok, supra, on the ground that the assignment in that case was given to secure the payment of a note. We think it is clear from a reading of the application for the bond, in the case at bar, that the assignment herein relied on by appellee was likewise primarily for security, since only upon certain conditions, constituting defaults under the contract, was the assignment to be "in effect from the date

hereof." No notice of the assignment was given to the county of Alameda prior to the petition, and it is clear that the county was holding this sum for the account of the bankrupt at the time the petition was filed. The assignment being for security, and having taken no steps to realize on that security or to reduce it to possession prior to the filing of the petition, the appellee cannot thereafter secure payment of its debt by taking possession of the security. In May v. Henderson, 268 U. S. 111, 117, 45 S. Ct. 456, 459, 69 L. Ed. 870, it is said:

"The several amounts debited to the account, with the assent or connivance of the assignee subsequent to the filing of the petition, fall clearly within the rule that as to property in the hands of the bankrupt, or held by others for his account 'the filing of the petition is a caveat to all the world and in effect an attachment and an injunction.' Mueller v. Nugent, supra; Lazarus [Michel & Lazarus] v. Prentice, 234 U. S. 263, 34 S. Ct. 851, 58 L. Ed. 1305; Knapp & Spencer Co. v. Drew, 87 C. C. A. 365, 160 F. 413; In re Denson (D. C.) 195 F. 854; In re Leigh (D. C.) 208 F. 486; Gunther v. Home Ins. Co. et al. (D. C.) 276 F. 575; Matter of R. & W. Skirt Co. et al., 138 C. C. A. 67, 222 F. 256; Reed v. Barnett Nat. Bank, 163 C. C. A. 233, 250 F. 983; and see Acme Harvester Co. v. Beekman Lum. Co., 222 U. S. 300, 301, 32 S. Ct. 96, 56 L. Ed. 208. See Babbitt v. Dutcher, 216 U. S. 102, 30 S. Ct. 372, 54 L. Ed. 402, 17 Ann. Cas. 969. In consequence, any person acquiring an interest in property of the bankrupt or his assignees for the benefit of creditors adverse to the creditors, after the filing of a petition with notice of it, may be directed to surrender the property thus acquired by summary order of the bankruptcy court. In re Denson, supra; In re Rudnick [& Co. (D. C.) 158 F. 223], supra; and see White v. Schloerb [178 U. S. 542, 20 S. Ct. 1007, 44 L. Ed. 1183], supra.

"The rule is the same when a creditor secures payment of his debt from the bankrupt's estate after the filing of the petition. A summary order may be made directing repayment of the money to the trustee in bankruptcy. Knapp & Spencer Co. v. Drew; In re Leigh; Matter of R. & W. Skirt Co., supra; In re Columbia Shoe Co. (C. C. A.) 289 F. 465. A like rule has been applied where a bank secures payment of its debt by setting up its lien or right of counterclaim against a deposit account of the bankrupt or the bankrupt's assignee, created subsequent to the filing of the petition. In re Michaelis & Lindeman (D. C.) 196 F. 718; Reed v. Barnett Nat. Bk., supra. See Farmers' & Mechanics' [Nat.] Bank v. Wilkinson, Trustee, 266 U. S. 503, 45 S. Ct. 144, 69 L. Ed. 408. Any other rule would leave the bankruptcy court powerless to deal in an effective way with those holding property for the bankrupt who, pending the bankruptcy proceedings, willfully dispose of it by placing it beyond the reach of the court. Bryan v. Bernheimer, 181 U. S. 188, 196, 21 S. Ct. 557, 45 L. Ed. 814."

■ The $6,327.07 due under the contract, which was being held by the county of Alameda for the account of the bankrupt at the time the petition was filed, came within the constructive possession of the bankruptcy court and subject to its summary jurisdiction. If it were possible to take away that summary jurisdiction by merely turning the property over to one who has a claim against it, the administration of bankrupts' estates would be greatly retarded and unduly hampered.

■ The sum of $16,438.58, paid to appellee on December 24, 1929, included the 25 per cent. retained percentage which was withheld by the county of Alameda under the terms of the contract to be paid to the contractor upon completion of the work under the contract. There is no evidence in the record as to how much of this sum represented the retained percentage and how much, if any, represented progress payments. Nor does the record show when, if at all, the bankrupt abandoned his contract with the county of Alameda. It clearly appears from the fifth paragraph of the application for the bond that the assignment to the appellee was for security, and, after satisfying its claims from the assigned funds, the balance was to be paid to the principal, the bankrupt. It therefore cannot be said that the bankrupt had no interest in the money retained by the county. It is true that the bankrupt would not be entitled to payment of the retained percentage until the contract was completed, but, nevertheless, the bankrupt had an interest therein which became part of the bankrupt's estate. At the time of the filing of the petition in bankruptcy, the county, having no notice of the assignment, was holding whatever money was due or to become due upon completion of the contract for the account of the bankrupt, and the money was therefore in the constructive possession of the bankruptcy court at that time, and subject to its summary jurisdiction.

Had it appeared from the record that the bankrupt had abandoned the contract and that the work was completed by appellee after the filing of the petition in bankruptcy, thus depriving the bankrupt of any further participation in the funds to become due on the contract, a different situation would have been presented. In the absence of such a showing, the sole question presented on the admitted facts is as to the situation at the time the petition was filed. The constructive possession of the funds being in the bankruptcy court, we conclude that the order of the District Court was erroneous; and the case is reversed, with instructions to overrule the objection of appellee to jurisdiction to proceed summarily.