## PEAVY–BYRNES LUMBER CO. et al. v. LONG–BELL LUMBER CO.

### No. 11274.

Circuit Court of Appeals, Fifth Circuit.

June 23, 1945.

50

———◇———

John B. Files, of Shreveport, La., for appellants.

Brady Cole, of Houston, Tex., and Flavel Robertson, of Kansas City, Mo., for appellee.

Before SIBLEY, HUTCHESON, and WALLER, Circuit Judges.

WALLER, Circuit Judge.

The facts in this case are fully stated in the opinion of the Court below in D.C., 55 F.Supp. 654.

The question presented is whether or not the purchaser of merchantable timber under a written contract is liable for the ad valorem taxes that accrued during the period between the date of the making and the date of the permissive cancellation of the contract.

Under the contract the purchaser had the following privileges: (1) To cut and pay for the timber at the agreed stumpage price of $5.00 per thousand feet for timber cut on or before August 31, 1934, and $6.00 per thousand feet for timber cut thereafter; or (2) To pay $126,769.77, plus all taxes, in a lump sum; or (3) "When the payments by the Purchaser to the Sellers for the timber cut under the terms of this Agreement shall equal the sum of $126,-769.77, plus all taxes paid by the Sellers * * * the Sellers shall convey to the Purchaser the property then remaining

* * *"; or (4) To refuse to cut any timber which "in its sole discretion it shall determine cannot be cut and manufactured at a profit; * * *" or (5) To terminate the contract upon three months' prior written notice without incurring any "liability whatever on account of its failure to cut or remove any of the timber described in said Exhibit A or on account of any act or thing done or omitted to be done under the terms of this Agreement or its operations thereunder."

Under the contract the purchaser had the following obligations: (1) It agreed "to purchase and pay for, at the price, in the manner, and in accordance with the other terms and conditions hereinafter set forth, all the merchantable timber now standing, lying or being upon the lands, * * *." (2) To pay for at the rate of $5.00 per thousand feet all timber cut before August 31, 1934, and $6.00 per thousand feet of all timber cut after September 1, 1934, on or before the 15th day of the succeeding month for all timber cut the month before. (The agreement was to remain in full force and effect "until all the merchantable timber now standing, lying or being * * * shall have been cut and removed under the terms of this Agreement, or until the sum or sums which shall be paid by the Purchaser to the Sellers for said timber under the terms of this Agreement shall equal said sum of $126,-769.77, plus all taxes which may be paid by the Sellers on the property described * * *.") (3) To cut and remove timber as rapidly as possible, and if the sellers should decide the purchaser was not cutting or removing the said timber as rapidly as it should cut or remove the same the sellers could: (a) notify the purchaser and demand more rapid cutting and removal; (b) notify the purchaser and demand that the purchaser pay to the sellers an amount equal to said sum of $126,769.77, plus all taxes, minus all sums theretofore paid; or (c) notify the purchaser and terminate the agreement after three months' notice.

In Section 5 it is again agreed that purchaser will cut and remove all merchantable timber, but with the proviso that it should not be required to remove any which in its sole discretion could not be cut and manufactured at a profit, and upon such a decision by purchaser the sellers could terminate the contract if, in their sole discretion, they determined that the

purchaser was not cutting and removing timber which could be manufactured at a profit. If the sellers should elect to terminate the agreement the purchaser at any time before the expiration of the said three months' period * * * or within three months after receiving the written notice * * * could tender to the sellers an amount equal to the sum of $126,-769.77, plus all taxes paid by the sellers, minus all sums paid by the purchaser to the sellers. Upon such tender, or when the payments by the purchaser to the sellers for the timber cut under the agreement should equal the sum of $126,769.77, plus all taxes paid by the sellers on the property described in Exhibit A, then, and in either event, sellers should convey to the purchaser all property then remaining.

■ So it seems that the purchaser was not required by the contract to pay the taxes unless and until it had cut enough timber at $5 and $6 per thousand feet to equal $126,769.77, plus the taxes, or unless it had taken advantage of its option to pay said lump sum plus taxes in lieu of the privilege of paying for so much only as had been cut each month. It did neither of these things and, therefore, was not liable for the taxes.

Section 3 of the contract provided, among other things, that:

"* * * the Sellers or the Purchaser may, at any time, by giving to the other three (3) months' prior written notice, terminate this Agreement."

Section 7 of the contract provided:

"If this Agreement shall be terminated in any manner as herein provided, the Purchaser shall incur no liability whatever on account of its failure to cut or remove any of the timber described in said Exhibit A or on account of any act or thing done or omitted to be done under the terms of this Agreement or its operations thereunder."

Pursuant to the provision for cancellation, the purchaser terminated the contract at a time when there was still $51,672.80 of the $126,769.77 still unpaid, so that the purchaser never cut a sufficient amount of stumpage at $5 and $6 per thousand feet to have equaled the said lump sum or to have produced any excess of said lump sum for application to the taxes. The purchaser was to get no conveyance of the timber until and unless it had paid the said sum, plus taxes. It was probably not deemed just nor appropriate that the purchaser should pay the taxes while the title was retained in the sellers and before the purchaser obtained any title. It merely had a cutting contract which would have been converted into an outright conveyance of the timber only upon the payment of said sum, plus taxes.

Nowhere in the contract is there any provision for payment of taxes by the purchaser except in the circumstances when the purchaser had theretofore paid the sum of $126,769.77. The provision to pay the taxes only if and when $126,769.77 worth of timber had been cut was doubtless inserted on the theory that the purchaser should not be expected to pay the taxes unless there was more than enough timber at the stumpage rate to pay the said lump sum price, plus the taxes.

■ The contract also gave the purchaser the unqualified right to cancel the contract upon ninety days' notice under Section 3 and Section 7. The purchaser took advantage of said provision of the contract and canceled. Notwithstanding the unequivocal language of Section 7 of the contract, authorizing a cancellation by the purchaser free from any liability for things done or omitted to be done, it is said in all justice that the purchaser could not, by its termination of the contract, also have canceled its obligation to pay any unpaid stumpage on timber which it had cut, nor could it wipe out any other material default in any payment then due to the sellers. However, it is not necessary that this question be decided for the reason that there was no default in the payment of any sums due for timber cut, and it has been demonstrated by what has been said heretofore that the purchaser was not required to pay taxes until and unless it had cut enough timber at the prescribed stumpage rate to equal the sum of $126,769.77, plus the taxes, or unless it had exercised its right to pay such lump sum, plus the taxes, in order to prevent a cancellation by the sellers. At $6 per thousand feet, it would have required the purchaser to cut 10,832,130 more feet of timber before it would have cut enough to have paid out the balance of $51,672.80, plus the $10,624.08 of accrued taxes. Section 7 of the agreement provided that if it were terminated the purchaser would incur no liability on account of its failure to

cut and remove any of the timber or on account of any act or thing done or omitted to be done under the terms of the agreement.

The judgment of the lower Court was correct and it is affirmed.