EXCHANGE BANK & TRUST CO. *v.* TEXARKANA SCHOOL DIST. NO. 7.

5-1267                                          301 S. W. 2d 453

Opinion delivered April 29, 1957.

*B. L. Allen,* for appellant.

*Smith & Sanderson,* for appellee.

CARLETON HARRIS, Chief Justice. On December 30, 1952, McDougald Construction Company, a partnership composed of G. W. McDougald and B. V. McDougald (hereinafter called McDougald) entered into a contract with Texarkana School District No. 7 of Miller County, Arkansas, for the construction of a senior high school building. Under the contract, McDougald was to furnish all material and perform all work, receiving as compensation therefor the sum of $377,111. McDougald furnished to the district two performance bonds, with United States Fidelity and Guaranty Company as surety, under the terms of which the principal and surety agreed to the faithful performance of the terms and conditions of the construction contract, and the surety agreed that in case of default of the contractor to perform, the surety

would, to the extent of the bond, make good any such default. It was agreed between the school district (sometimes called owner) and McDougald that the owner would pay the contract price in monthly installments as the work progressed. The amount of each installment was to be based on estimates covering the preceding month's progress, work done, and materials delivered on the job, with ten per cent retained until final completion and acceptance of the entire job. McDougald was to furnish satisfactory evidence of payment of all laborers, materialmen, and subcontractors, and owner was authorized to withhold from McDougald's unpaid compensation a sum of money sufficient to pay any and all such unpaid claims. The contract provided that in paying any unpaid bills of McDougald, the owner was deemed the contractor's agent, and any payment so made was to be considered as a payment made under the contract by the owner to the contractor. In furnishing the bond, McDougald entered into an agreement with the United States Fidelity and Guaranty Company, (hereinafter called surety), under which McDougald agreed "* * * to indemnify the Company (surety) against all loss, damages, claims, suits, costs and expenses, whatever, including court costs and counsel fees at law or in equity, or liability therefor, which the Company may sustain or incur by reason of: executing or procuring said bond, or making any investigation on account of same, or procuring its release or evidence thereof from same, or defending, prosecuting or settling any claim, suit or other proceeding. * * *" To secure the surety, McDougald did "* * * assign and convey to the Company as collateral to secure the obligations herein and any other indebtedness or liabilities of the undersigned to the Company, whether heretofore or hereafter incurred, all the right, title and interest of the undersigned in and to: (a) said contract[1] and any change, addition, substitution or new contract (including all retained percentages, deferred payments, earned moneys and all moneys and properties that may be due or become due under said

---

[1] Referring to construction contract between McDougald and school.

contract, change, addition, substitution or new contract) * * *; such assignment to be effective as of the date of the construction contract but only in event of (1) any breach of any of the agreements herein contained or of said contract or performance bond or of any other bond executed or procured by the Company on behalf of the applicant herein. * * * '' This agreement was executed on December 30, 1952.

On January 27, 1953, McDougald executed another assignment of its rights under the contract with the school district, to the Exchange Bank and Trust Company, appellant herein, to secure advances to be made to it. The stipulation does not reflect that all such advances were made in connection with McDougald's performance of his contract with the district, and no advances were made after November 13, 1953. Appellant notified the district of its assignment. Based on eleven monthly estimates covering the construction period from the beginning of the contract through November, 1953, installments of the contract price were made to McDougald for its account amounting in the aggregate to $272,556.41. Ten per cent of such monthly estimates, amounting in the aggregate to $27,055.23, was retained by the school district. The eleventh such estimate, covering work done and materials furnished in November, 1953, was filed by McDougald with the district after December 1, 1953, and payment based thereon was remitted for McDougald's account by owner on December 10, 1953.[2] Around the middle of December, McDougald was in such financial straits that it was unable to meet its payroll, and on December 28, 1953, formally notified appellee owner that it was unable to continue in the performance of the contract in question. Two days later, the owner notified intervener of McDougald's default, and intervener elected to complete the performance of the construction contract in its capacity as surety under the bond, and in accordance with its obligation. Shortly after January 1, 1954, McDougald filed its twelfth esti-

---

[2] Checks were made payable to McDougald, but from March, were transmitted by mail to McDougald's assignee, appellant.

mate covering work done during the month of December. At the time of default, the aggregate of the retained percentages under the construction contract, which was being held by the school district, was $27,055.23. This amount was subsequently paid to the surety, who completed McDougald's contract at a cost of $206,414.89. Appellant filed suit against the school district, alleging that the district owed it $14,469.39.[3] This was based upon the assignment from McDougald to appellant, wherein appellant was to receive all monies due McDougald under the contract. (The amount sought was the total sum of indebtedness due the bank from McDougald.) The school district filed its answer, setting up that the United States Fidelity and Guaranty Company, as surety, "* * * under equitable subrogation, became entitled to receive all of the contract price stipulated for in said construction contract which remained at the time of contractor's said default unpaid, upon the completion by surety of the performance of the construction and improvements in accordance with the terms of the construction contract after contractor's default thereunder * * *." The United States Fidelity and Guaranty Company filed its intervention, adopting the answer of the school district. At the conclusion of the hearing, the court entered its decree dismissing appellant's complaint. From such decree comes this appeal.

There is really only one question to be determined in this litigation, *i.e.*: "Was the right of appellant to funds in the hands of appellee, Texarkana School District No. 7, superior to the right of appellee, United States Fidelity and Guaranty Company?" At the time of McDougald's default, it owed its materialmen, subcontractors, and employees for work done and materials furnished during the month of December, the sum of $28,147.54. For work done and materials furnished on the job prior to December 1, 1953, it owed the additional sum of $71,418.58. This amount was past due and remained unpaid until paid by the surety. Appellant contends that it had a valid assignment from McDougald, which

---

[3] Appellant is presently seeking only $11,384.54.

was accepted by the school district, and that no subsequent assignee of McDougald, and no creditor, could acquire any rights superior to the rights of the bank, the first assignee, and any monies due McDougald for work done in December should properly have been paid to appellant. It is also contended that appellant is entitled to a sufficient amount of the retained percentages as will liquidate McDougald's indebtedness to it. We do not agree. There was nothing due (to McDougald or appellant) because of McDougald's failure to pay for work done and materials furnished. This constituted an amount far greater than any sum due under estimate twelve. Each estimate did not constitute a separate or completed contract. The contract was indivisible, and these estimates were made under its provisions. It is conceded by appellant that under prior decisions of this Court, the United States Fidelity and Guaranty Company would be entitled to equitable subrogation as to the funds in the hands of the school at the time of McDougald's default. *American Bank & Trust Co.* v. *Langston,* 180 Ark. 643, 22 S. W. 2d 381; *City of Texarkana* v. *F. W. Offenhauser & Co.,* 182 Ark. 201, 31 S. W. 2d 140. It is contended, however, that Act 118, of 1945 (Ark. Stats. (1947) 68-805) contravenes the earlier holdings of the Court and is controlling in this matter. Said statute reads as follows:

"Every written assignment made in good faith, whether in the nature of a sale, pledge or other transfer, of an account receivable or any moneys due or to become due on an open account or on a contract, except for wages and salaries (all of which shall hereinafter be referred to as 'account'), with or without the giving of notice of such assignment to the debtor, shall be valid and complete at the time of the making of such assignment, and shall be deemed to have been fully perfected at that time. Thereafter, no *bona fide* purchaser from the assignor, no creditor of the assignor, and no other assignee or transferee of the assignor, in any event shall have or be deemed to have acquired any right or interest in the account so assigned or transferred or in the pro-

ceeds thereof or in any obligation substituted therefor, superior to the rights and interest therein of the assignee. In any case where, acting without knowledge of such assignment or transfer, the debtor in good faith pays all or part of such account to the assignor, or to such creditor, subsequent purchaser or other assignee and transferee, all payments so made shall be acquittance to the debtor to the extent thereof, and such assignor, creditor, subsequent purchaser or other assignee and transferee, shall be a trustee of any sums so paid and shall be accountable and liable to the prior assignee thereof.

"Provided further, however, that any defense of the debtor against any account so assigned or transferred shall be good as against any subsequent purchaser or other assignee and transferee."

We cannot agree with appellant's contention. This statute does not enlarge the rights of assignee as compared to the rights of the assignor (against a debtor), nor does it take away any defense available against the assignor. The title of this Act is "AN ACT to Benefit Small Business by Facilitating the Obtaining of Loans and Financial Assistance by Merchants and Other Businessmen Through the Assignment of Accounts Receivable and Amounts Due or to Become Due on Open Accounts or Contracts Whether or Not the Debtors Thereon Are Notified of Such Assignments and Providing That Non-Notification of Such Debtors of Such Assignments Shall Not Affect or Impair the Validity Thereof." It is not necessary to consider this act in detail in the instant litigation. It is sufficient to state that we consider appellant's construction to be erroneous.

Let it be remembered that appellant's action here is derivative through McDougald, and appellant may not maintain any action against the appellee school district that McDougald could not assert. That McDougald was in default is not disputed; that it was indebted for labor and materials on the job in an amount in excess of funds held by the district is not disputed. Accordingly,

it would not be contended that the district should have paid the monies over to McDougald. The same reasoning applies to the rights of the surety. There was a clear duty and obligation upon the United States Fidelity and Guaranty Company to pay the outstanding indebtedness of its principal, and to complete the contract. This it did at a cost stipulated to be reasonable. The doctrine of equitable subrogation clearly applies.

Affirmed.