Wally **GRAY** and Maryland Casualty Company, a corporation, and Northern Commercial Company, a corporation, Appellants,

v.

**TRAVELERS INDEMNITY COMPANY,**
a corporation, Appellee.

No. 16482.

United States Court of Appeals
Ninth Circuit.

July 11, 1960.

Sullivan & Offenbacker, Phillip Offenbacker, Seattle, Wash., Miracle, Treadwell & Pruzan, Seattle, Wash., for appellants Gray and Maryland Casualty Company.

Jones & Grey, Seattle, Wash., for appellant Northern Commercial Company.

Arthur Grunbaum and Solie M. Ringold, Seattle, Wash., for appellee.

Before MAGRUDER, HAMLEY and MERRILL, Circuit Judges.

MAGRUDER, Circuit Judge.

Green-Birch, a joint venture, deposited into the registry of the district court the sum of $38,865.11, a balance owed by the depositor to Oneco, Inc., for work completed by Oneco as a subcontractor upon certain facilities at Ladd Air Force Base in Alaska. After the claims of various parties had been settled, the fund, amounting to $18,505.83, was contested on the one hand by The Travelers Indemnity Company, a Connecticut corporation, and on the other by Wally Gray, a Washington resident, Maryland Casualty Company, a Maryland corporation, and Northern Commercial Company, a Delaware corporation. Since the sum in question exceeded $500, and since two or more of the adverse claimants were of diverse citizenship, jurisdiction attached under the interpleader statute, 28 U.S.C. § 1335. See Blair Holdings Corp. v. Bay City Bank and Trust Co., 9 Cir., 1956, 234 F.2d 513; 3 Moore, Federal Practice, para. 22.09 (1948), especially note 30 at page 3033 (collecting cases). Wally Gray, Maryland, and Northern appeal from a judgment in favor of Travelers.

The chronology of transactions in the case is as follows:

April 14, 1955—Travelers executed a bond for Oneco guaranteeing Oneco's performance of a contract between it and Maynard R. Smith.

July 1, 1955—Travelers and Oneco executed a general agreement of indemnity in favor of Travelers. We shall discuss this indemnity agreement at some length below.

September 20, 1955—Travelers executed two more bonds for Oneco, one guaranteeing Oneco's performance of its contract with Green-Birch, the other guaranteeing Oneco's performance of its contract with Islands, Anderson, Monten & Benson.

June 11, 1956—Travelers filed with Green-Birch a photostatic copy of its general indemnity agreement with Oneco. As of this date Oneco was indebted, under its contract with Green-Birch, to various suppliers and materialmen.

June 16, 1956—All funds due from Green-Birch were assigned by Oneco to Wally Gray and Maryland as security for a debt incurred by Oneco through its failure to pay premiums upon general liability and workmen's compensation insurance policies. Presently, Oneco owes Maryland and Wally Gray $16,140.07.

July 2, 1956—Green-Birch was notified of the June 16 assignment.

July 30, 1956—Green-Birch paid the Territory of Alaska taxes due from Oneco because of activities in regard to the Green-Birch contract. The money was paid out of the sum which Green-Birch owed Oneco under the contract.

October 15, 1956—Oneco assigned to Northern $20,000 of the amount owing from Green-Birch as security for $20,000 worth of debts owed Northern by two other firms. These debts are still outstanding.

October 19, 1956—Northern gave Green-Birch notice of the assignment.

May 15, 1957—By this date Travelers had paid out approximately $9,300 under the bonds it executed for Oneco guaranteeing performance of the contracts with Smith and with Islands et al. As of now Travelers is a defendant in pending litigation instituted by Smith in order to collect about $18,000 on the bond which Travelers issued for Oneco on Smith's contract.

The crux of the matter is the meaning of the general indemnity agreement between Travelers and Oneco and the priority which it establishes as against other assignees. The heart of this instrument, and the principal bone of contention among the parties, is paragraph 6, which reads as follows:

"6. If such bond be given in connection with a contract, the Company is hereby authorized, but not required, to consent to any change in the contract or in the plans or specifications relating thereto; to make or guarantee advances or loans for the purposes of the contract without the necessity of seeing to the application thereof, it being understood that the amount of all such advances or loans, unless repaid with legal interest by the Contractor to the Company when due, shall be conclusively presumed to be a loss hereunder; in the event of the abandonment, forfeiture or breach of the contract, or the breach of any bond given in connection therewith, or the failure, neglect or refusal to pay for labor or materials used in the prosecution of the contract, to take possession of the work under the contract and, at the expense of the Indemnitors, to complete the contract, or cause, or consent, to the completion thereof. The Indemnitors hereby assign, transfer, and set over to the Company (to be effective as of the date of any such bond, but only in the event of a default as aforesaid), all of their rights under the contract, including their right, title and interest in and to all subcontracts let in connection therewith; all machinery, plant equipment, tools and materials which shall be upon the site of the work or elsewhere for the purposes of the contract, including all materials ordered for the contract, and any and all sums due under the contract at the time of such abandonment, forfeiture, breach, failure, neglect or refusal, or which may thereafter become due, and the Indemnitors hereby authorize the Company to endorse in the name of the payee, and to collect any check, draft, warrant or other instrument made or issued in payment of any such sum, and to disburse the proceeds thereof."

■■ We think the language clearly contemplates an assignment (1) to take place as of the date the surety executed a bond for Oneco on a specific contract, (2) to transfer funds due but not yet paid to the principal under the specific con-

tract, and (3) to be conditioned on a default by Oneco upon the specific contract involved. The obvious purpose of the assignment is to secure the surety against the possibility that Oneco may not in the future be able to live up to its promise to indemnify the surety. What is not so obvious is which possible obligations of Oneco are secured.[1]

Contrary to appellants' argument, paragraph 12 of the agreement does not render the assignments under paragraph 6 revocable. The former provision specifically states that obligations between the parties which are extant at the time of revocation are not thereby nullified. Since paragraph 6 contemplates an assignment upon execution of the bond guaranteeing performance rather than upon the date when the condition of default occurs, the obligation under the assignment is created once the bond is executed. Therefore, the power to revoke pursuant to paragraph 12 cannot affect a paragraph 6 assignment even though the general agreement can be terminated prior to a default by the principal under a guaranteed contract.

■ Appellants also contend that default by Oneco on the Green-Birch contract cannot be deemed the sole condition of the assignment contemplated by paragraph 6; that the assignment is also conditioned on the surety's completion of the contract and/or the suffering of a loss by Travelers on its bond guaranteeing Oneco's performance to Green-Birch. However, if paragraph 6 is interpreted as suggested by appellants, the assignment provision is meaningless; for when a surety, in discharging its obligation under bond, completes a contract for a defaulting principal or sustains a loss upon its bond, it becomes subrogated to the rights of the obligee in the fund which the obligee has retained, in this case Green-Birch's rights to the money owed Oneco. And the rights created by subrogation accrue as of the time the surety executes its bond guaranteeing performance. Thus, even without paragraph 6, had Travelers completed the Green-Birch contract or sustained a loss on the bond issued to Oneco for that work, it would have been subrogated as of the time the Green-Birch bond was executed to whatever rights Green-Birch had to the money owed Oneco. See Prairie State Bank v. United States, 1896, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412; Henningsen v. United States Fidelity & Guaranty Co., 1908, 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547; Danais v. M. De Matteo Const. Co., D.C.D.N.H.1952, 102 F.Supp. 874; United States Fidelity & Guaranty Co. v. City of Montesano, 1931, 160 Wash. 565, 572, 295 P. 934, 937; Exchange Bank & Trust Co. v. Texarkana School District No. 7, 1957, 227 Ark. 759, 301 S.W.2d 453. In the light of these decisions, to read paragraph 6 as appellants contend would be to ignore the rule of contractual construction to the effect that an interpretation ought not to be adopted which would render the document meaningless. See Andrew Jergens Co. v. Woodbury, Inc., D.C.Del.1921, 273 F. 952, 959, affirmed 3 Cir., 1922, 279 F. 1016, certiorari denied 1922, 260 U.S. 728, 43 S.Ct. 92, 67 L.Ed. 484; Peavy-Byrnes Lumber Co., Inc. v. Long-Bell Lumber Co., D.C.W.D.La.1944, 55 F.Supp. 654, 659, affirmed 5 Cir., 1945, 150 F.2d 49; Thomas Hoist Co. v. William J. Newman Co., 1937, 365 Ill. 160, 6 N.E.2d 171, 174.

■ Since paragraph 6 cannot fairly be read to require the occurrence of conditions other than default under the Green-Birch contract, appellants' argument that the contract is fatally vague is without merit.

---

1. By moving from Williams v. McFerrin, 5 Cir., 1957, 242 F.2d 53, to Williams v. Steamship Mutual Underwriting Ass'n, Ltd., 1954, 45 Wash.2d 209, 229, 273 P.2d 803, 815, we conclude that, in interpreting the general indemnity agreement, the law of Alaska, where the instrument was apparently executed, is applicable. In the absence of pertinent Alaska decisions, we have looked to other jurisdictions to determine what view an Alaskan court would take under the circumstances.

The next problem is to determine what contingent, future obligations of Oneco to Travelers are secured by the assignment of the Green-Birch funds under paragraph 6. To begin with, it is abundantly clear that the assignment called for by paragraph 6 is an assignment for security purposes. Travelers could not reap benefit from the assignment if no obligation running from Oneco to the surety is ever created. Moreover, if deemed to secure Travelers only against loss incurred under its bond on the Green-Birch transaction, the assignment has no meaning. As previously mentioned, a surety incurring a loss on its bond guaranteeing performance of a certain contract is subrogated to the extent of that loss to the rights of the principal's contractor in any money retained under the contract; and the surety's rights by subrogation take effect as of the time when the bond was executed. See cases cited 280 F.2d 552, supra. Consequently the assignment, if interpreted to secure the surety against loss on the Green-Birch bond alone, accords Travelers no greater protection than it would have had without any rights by assignment. If possible, a contractual provision should not be rendered superfluous by judicial interpretation.

In addition, paragraph 3 of the indemnity agreement provides:

"3. If the Company shall set up a reserve to cover any claim, suit or judgment under any such bond, the Indemnitors will, immediately upon demand, deposit with the Company a sum of money equal to such reserve, such sum to be held by the Company as collateral security on such bond, and such sum and any other money or property which shall have been, or shall hereafter be, pledged as collateral security on any such bond shall, unless otherwise agreed in writing by the Company, be available, in the discretion of the Company, as collateral security on any other or all bonds coming within the scope of this Agreement."

The assignment of the funds owed by Green-Birch clearly being a security assignment of one sort or another, the provisions of paragraph 3 are applicable. It follows that the agreement taken as a whole permits Travelers to apply funds assigned under paragraph 6 to secure itself against losses upon any future bond for Oneco even though paragraph 6 in itself implies an assignment to protect the surety only from loss under the particular contract defaulted upon.

The majority of those few cases which deal with problems of interpretation similar to the one before us show only that the present assignment clause could have been more lucidly drawn. Indemnity agreements more clearly assigning funds due under a specific contract to the surety to secure him against loss on any past, present or future bond executed in favor of the principal were examined by the courts in In re Allied Products Co., 6 Cir., 1943, 134 F.2d 725, certiorari denied sub nom. Barnett v. Maryland Casualty Co., 1943, 320 U.S. 740, 64 S.Ct. 40, 88 L.Ed. 438; Street v. Pacific Indemnity Co., 9 Cir., 1932, 61 F.2d 106; Lacy v. Maryland Casualty Co., 4 Cir., 1929, 32 F.2d 48; In re Cline Const. Co., D.C.E.D.Ky.1956, 141 F.Supp. 696. Provisions involved in both the Street and Lacy cases are in terminology much like paragraph 3 of the instant agreement quoted above; all three provisions are identical in meaning. See paragraph "Eighth" in the Lacy Case, 32 F.2d at page 50, and paragraph "Fifth" in the Street case, 61 F.2d at page 107. In Lacy v. Maryland Casualty Co., paragraph "Eighth" dictated a decision in favor of the surety. In Street v. Pacific Indemnity Co., the court never reached the effect of paragraph "Fifth". See Street v. Pacific Indemnity Co., 9 Cir., 1935, 79 F.2d 68, certiorari denied 1936, 297 U.S. 718, 56 S.Ct. 595, 80 L.Ed. 1003 (appeal from the disposition upon remand pursuant to the court's opinion at 61 F.2d 106).

Southern Surety Co. v. Town of Greeneville, 6 Cir., 1920, 261 F. 929, involved a provision in an indemnity agree-

ment similar to paragraph 3 here. See covenant "Seventh", 261 F. at page 931. Had this covenant controlled, said the court, the surety would have been able to apply the funds assigned (funds due the principal under a specific contract) to secure any loss incurred by the surety upon any bond it had issued to the principal. But there was another provision in the agreement stating that it became null and void in the event the surety sustained no loss under the specific contract. The court held the latter provision controlling as to the meaning of the assignment, ignoring or failing to notice that by so doing it turned the surety's rights by assignment into a superfluous duplicate of the rights attained through subrogation. In other words, the existence of the assignment as the court construed it neither added to nor detracted from the surety's rights. In any event, the instant agreement does not provide that the assignment to Travelers becomes null and void if no loss is incurred by the surety on the Green-Birch bond.

In sum, the general indemnity agreement must be construed as an assignment, as of the date when Travelers' bond for the Green-Birch job was issued, of funds to become due and not yet paid to Oneco under the Green-Birch contract. The assignment is conditional upon default by Oneco on the Green-Birch contract, and Travelers may apply the assigned funds to secure losses upon any

bond which it has executed for the principal.

■■■ There is a split in authority as to whether a conditional assignment takes place as of the time the condition occurs or as of the time the assignment is made.[2] Compare Coon River Co-operative Sand Ass'n v. McDougall Const. Co., 1932, 215 Iowa 861, 244 N.W. 847; Globe Indemnity Co. v. West Texas Lumber Co., Tex.Civ.App.1930, 34 S.W.2d 896; North Pacific Bank v. Pierce County, 1946, 24 Wash.2d 843, 167 P.2d 454, 164 A.L.R. 602, with In re Allied Products Co., supra, 6 Cir., 1943, 134 F.2d 725, certiorari denied sub nom. Barnett v. Maryland Casualty Co., 1943, 320 U.S. 740, 64 S.Ct. 40, 88 L.Ed. 438; American Employers Ins. Co. v. School District of Town of Newport, 1954, 99 N.H. 188, 107 A.2d 684; O'Neil Engineering Co. v. First National Bank of Paris, Tex. Com.App.1920, 222 S.W. 1091. In the first three of these cases, the court held that an assignment to the surety conditioned on a default by the principal was effective as to the other assignees only as of the date of the default. In the last three decisions the assignment was deemed effective as of the time the surety's bond was executed. This we think is the better view. On the date of the assignment given priority in the first group of cases mentioned above, the contract which was to produce the fund assigned had not been completed. Since

2. We think the question of priority should be governed by Alaska law. The courts of the forum state, Washington, have yet to enunciate a conflicts rule regarding what law is to be applied in determining priority among successive assignees of contractual rights or in deciding questions of contractual performance in general. Pursuant to Restatement, Conflict of Laws § 354 (1934), approved in In re Rosen, 3 Cir., 1946, 157 F.2d 997, 999 note 7, and Wishnick v. Preserves & Honey, Inc., Sup.Ct.1934, 153 Misc. 596, 598, 275 N.Y.S. 420, 422, modified on other grounds, 2d Dept. 1936, 247 App. Div. 738, 285 N.Y.S. 522, priority among successive assignees of contractual rights is determined according to the law of the place where the contract is performed for the reason that the same law

governs other questions of performance. Generally, if not unanimously, the law which governs performance of a contract is either the law of the place of performance or the law of the place of most contacts with the contract. Applying either rule in the instant case, Alaska law would apply, for the contract was performed there, and Alaska had the most contacts with the transaction.

The parties have stipulated that none of the assignments involved in the present litigation have been recorded under Title 31B, 1 Alaska Comp.Laws Ann. (Cum.Supp.1958). Accordingly, the assignee taking first in time takes first in right. Again, in the absence of Alaska decisions, we have looked to general precedents.

the assigned fund was not yet in existence, the implicit condition that there be such a fund had not then been satisfied. Every assignment of funds to become due under a contract is conditional upon some degree of performance by the assignor, and assuredly the condition of default renders the assignment no less certain than does the condition of performance. By a parity of reasoning, if the condition of performance has no bearing on the date the assignment becomes effective, the condition of default should be similarly irrelevant. See 4 Corbin, Contracts § 875 (1951). Consequently, if Oneco's "indebtedness" on June 11, 1956, is not a default, which question we need not decide, default undeniably preceded this litigation and triggered the assignment. Once the assignment was set in motion, it became effective as to other assignees as of the date the Green-Birch bond was executed. The assignment to Travelers thus has priority.

The last question in this case concerns the extent of Travelers' interest in the funds assigned. Since the assignment was for security purposes, the surety is entitled to no more than the amount necessary to cover the debt secured. Here the debts secured are contingent, and the possibility that Oneco will become obligated to Travelers can terminate only when the general indemnity agreement is revoked. As between the parties, the funds owing to Oneco under the Green-Birch contract can be applied by Travelers to secure a loss on a bond issued to Oneco at any time in the future. As to subsequent assignees, however, the assignment to the surety must be likened to an assignment to secure advances which might be made by the surety to the principal in the future. These "advances" would be in the form of losses suffered by the surety upon future bonds. A subsequent assignee generally is given priority over the recipient of a prior assignment to secure future advances if at the time the advances are made the assignee for security knows of the other's rights. Therefore, subsequent assignees of Oneco's rights in the fund owed by Green-Birch would prevail over Travelers as to losses on bonds issued after the rights of the subsequent assignees are known to the surety. The execution of future bonds is analogous to future advances. But in the instant case the bonds for the Smith contract and for the Islands, Anderson, Monten & Benson contract were executed prior to Oneco's assignments to appellants. Consequently, Travelers' priority extends to the entire fund in the district court's registry.

Affirmed.